**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

v.

MIQUEL MORROW,

Defendant.

**Criminal No. 04cr355-01 (CKK)
(Civil Action No. 12-1323)**

**MEMORANDUM OPINION**
(April 30, 2015)

On July 15, 2005, Miquel Morrow ("Morrow") was convicted by a jury in this Court of: conspiracy to conduct and participate, directly and indirectly, in the affairs of an enterprise, through a pattern of racketeering activity ("Count I"), including the armed robbery of the Bank of America located at 5911 Blair Road, N.W., Washington, D.C., on or about January 22, 2004 ("Racketeering Act 1"), the armed robbery of the Riggs Bank located at 7601 Georgia Avenue, N.W., Washington, D.C., on or about March 5, 2004 ("Racketeering Act 2"), the armed robbery of the Industrial Bank located at 2012 Rhode Island Avenue, N.E., Washington, D.C., on or about June 12, 2004 ("Racketeering Act 3"), the armed robbery of the SunTrust Bank located at 5000 Connecticut Avenue, N.W., Washington, D.C., on or about June 29, 2004 ("Racketeering Act 4"), the armed robbery of the Chevy Chase Bank located at 3601 St. Barnabas Road, Silver Hill, Maryland, on or about May 10, 2004 ("Racketeering Act 5"), the armed robbery of the Chevy Chase Bank located at 5823 Eastern Avenue, Chillum, Maryland, on or about May 27, 2004 ("Racketeering Act 6"), the assault with intent to kill while armed of Edwin Arrington on or about April 23, 2004 ("Racketeering Act 7"), and assault with intent to kill while armed of Edwin Arrington on or about May 15, 2004 ("Racketeering Act 9"); conspiracy to commit offenses

against the United States, that is, armed robberies of banks the deposits of which were then insured by the Federal Deposit Insurance Corporation ("Count II"); armed robbery of Bank of America on or about January 22, 2004 ("Count III"); using and carrying a firearm during and in relation to a crime of violence on or about January 22, 2004 ("Count IV"); armed robbery of Riggs Bank on or about March 5, 2004 ("Count VII"); using and carrying a firearm during and in relation to a crime of violence on or about March 5, 2004 ("Count VIII"); armed robbery of Industrial Bank on or about June 12, 2004 ("Count X"); using and carrying a firearm during and in relation to a crime of violence on or about June 12, 2004 ("Count XI"); unlawful possession of a firearm on or about June 12, 2004, by a person convicted of a crime punishable by imprisonment for a term exceeding one year ("Count XII"); armed robbery of SunTrust Bank on or about June 29, 2004 ("Count XV"); using and carrying a firearm during and in relation to a crime of violence on or about June 29, 2004 ("Count XVI"); unlawful possession of a firearm on or about June 29, 2004, by a person convicted of a crime punishable by imprisonment for a term exceeding one year ("Count XVII"); and assault with intent to kill while armed of Edwin Arrington on or about May 15, 2004 ("Count XIX").  Presently before the Court is Morrow's *pro se* [774] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence and [832] Motion for Appointment of Counsel.  Upon a searching review of the parties' submissions,[1] the relevant authorities, and the record as a whole,

---

[1] While the Court renders its decision today on the record as a whole, its consideration has focused on the following documents: Def.'s Mot. to Vacate Sentence ("Def.'s Mot."), ECF No. [774]; Def.'s Memo. of Law in Support of Mot. ("Def.'s Memo."), ECF No. [774-1]; Declaration of Miquel Morrow ("Def.'s Declaration"), ECF No. [774-2]; Govt.'s Opp'n to Def.'s Mot. to Vacate Sentence ("Govt.'s Opp'n"), ECF No. [801]; Def.'s Memo. in Reply to the Prosecution's Resp. in Opp'n ("Def.'s Reply"), ECF No [821]; Def.'s Supp. to 28 U.S.C. 2255 Motion ("Def.'s Supp."), ECF No. [830]; Def.'s Mot. for Appt. of Counsel ("Def.'s Mot. for Appt. of Counsel"), ECF No. [832]; Govt.'s Supp. Opp'n to Def.'s Supp. to his *Pro Se* Mot. to Vacate, Set Aside or

the Court finds no grounds for setting aside Morrow's conviction and sentence at this time.  Given

that the Court has determined that a hearing is not necessary in this matter, the Court finds that the

interests of justice do not require that the Court appoint Morrow counsel in this matter and,

accordingly, his request is denied.  Accordingly, the Court shall DENY Morrow's [774] Motion

Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence and [832] Motion for

Appointment of Counsel.

## I. BACKGROUND

On August 3, 2004, a federal grand jury indicted Morrow and six other codefendants in

connection with a string of bank robberies that occurred in the District of Columbia and Maryland.[2]

Indictment, ECF No. [10].  The United States Court of Appeals for District of Columbia Circuit

("D.C. Circuit") described the factual scenario:

> [Morrow and his codefendants] indulged in a violent crime spree throughout the
> District of Columbia metro area that lasted for nearly a year and a half. Appellants,
> who began by cultivating and selling marijuana, evolved into a ring that committed
> armed bank robberies, using stolen vehicles to travel to the targeted banks and make
> their escapes. By the summer of 2004, the robbers had developed a signature style.
> The gang wore bullet-proof vests, masks, and gloves, and relied on superior fire
> power, preferring to use military weapons like AK-47s instead of handguns because
> they surmised the metropolitan police "wouldn't respond" when Appellants
> "robb[ed] banks with assault weapons." The gang made use of several stolen
> vehicles, strategically placed along the get-away-route, for each robbery. The
> robbers would serially abandon the vehicles, often torching them in an attempt to
> destroy any forensic evidence that might be left behind.

*United States v. Burwell*, 642 F.3d 1062, 1064-65 (D.C. Cir. 2011) (citation omitted).  The matter

---

Correct Sentence, Pursuant to 28 U.S.C. § 2255 ("Govt.'s Supp. Opp'n"), ECF No. [861]; Def.'s
Supp. Reply Brief ("Def.'s Supp. Reply"), ECF No. [871]; and transcripts of status hearings and
trial.

[2] An eighth codefendant later was added by virtue of a superseding indictment. Superseding
Indictment (Aug. 5, 2004), ECF No. [19].

proceeded to trial in this Court, and Morrow was tried alongside five other codefendants.  On July 15, 2005, a jury convicted Morrow on thirteen counts upon which he was charged in the indictment; the jury found Morrow not guilty of a fourteenth count (Count XVIII).  Verdict Form, ECF No. [471].

On May 17, 2006, this Court sentenced Morrow to 240 months of imprisonment on Count I, 60 months of imprisonment on Count II, 300 months of imprisonment each on Counts III, VII, X, and XV, and 120 months of imprisonment each on Counts XII and XVII, to run concurrently to each other.  The Court further sentenced Morrow to 120 months of imprisonment on Count IV, 300 months of imprisonment each on Counts VIII and XI, life imprisonment on Count XVI, and 60 months of imprisonment on Count XIX, to run consecutively to each other and to any other sentence.  *See* Judgment in a Crim. Case, ECF No. [640].  Morrow filed a timely appeal of his conviction and on April 29, 2011, the D.C. Circuit affirmed Morrow's conviction in a published opinion.  *United States v. Burwell*, 642 F.3d 1062 (D.C. Cir. 2011), *aff'd in part en banc*, 690 F.3d 500 (D.C. Cir. 2012).  Morrow did not file a petition for writ of certiorari with the Supreme Court of the United States.  Morrow currently is serving his sentence.

Pending before the Court is Morrow's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.  Morrow's motion is premised on overarching ineffective assistance of counsel claims with respect to four stages of the proceedings, pre-trial, trial, post-trial, and appeal, by his trial counsel, Joanne Hepworth, and his appellate counsel, David B. Smith.  Specifically, Morrow claims that his counsel rendered him ineffective assistance by: (1) failing to challenge the violation of his statutory right to a speedy trial prior to trial; (2) failing to raise double jeopardy and multiplicity challenges to the indictment prior to trial, failing to move to dismiss

4

based on this challenge during trial, and failing to raise this challenge at sentencing and on appeal; (3) failing to properly advise Morrow regarding a plea offer extended by the government; (4) failing to request an informant jury instruction at trial; (5) failing to raise a Confrontation Clause challenge to certain evidence during trial and on appeal; (6) failing to properly cross-examine two government witnesses at trial; (7) failing to challenge government misconduct at trial and on appeal; (8) failing to properly challenge juror misconduct and bias at trial and on appeal; (9) failing to argue that the rule of lenity precluded the imposition of certain sentences at sentencing and on appeal; (10) failing to prepare and file a writ of certiorari with the Supreme Court of the United States.  Morrow also asserts that he is entitled to relief based on intervening changes in the law.

## II.  LEGAL STANDARD

Under 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside, or correct its sentence if the prisoner believes that the sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a). The circumstances under which such a motion will be granted, however, are limited in light of the premium placed on the finality of judgments and the opportunities prisoners have to raise most of their objections during trial or on direct appeal.  "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982).  Nonetheless, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect

thereto." 28 U.S.C. § 2255(b).

A prisoner may not raise a claim as part of a collateral attack if that claim could have been raised on direct appeal, unless he can demonstrate either: (1) "cause" for his failure to do so and "prejudice" as a result of the alleged violation, or (2) "actual innocence" of the crime of which he was convicted. *Bousley v. United States*, 523 U.S. 614, 622 (1998). However, "[w]here a petitioner raises claims of ineffective assistance of counsel in a § 2255 motion, he need not show 'cause and prejudice' for not having raised such claims on direct appeal, as these claims may properly be raised for the first time in a § 2255 motion." *United States v. Cook*, 130 F. Supp. 2d 43, 45 (D.D.C. 2000), *aff'd*, 22 F. App'x 3 (D.C. Cir. 2001) (citation omitted).

A defendant claiming ineffective assistance of counsel must show (1) "that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms," and (2) "that this error caused [him] prejudice." *United States v. Hurt*, 527 F.3d 1347, 1356 (D.C. Cir. 2008) (citation omitted). "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). It is the petitioner's burden to show that counsel's errors were "so serious" that counsel could not be said to be functioning as the counsel guaranteed by the Sixth Amendment. *Harrington v. Richter*, 562 U.S. 86, 104 (2011). "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions . . . . [I]nquiry into counsel's conversations with the defendant may be critical to a proper assessment of . . . counsel's other litigation decisions." *Strickland*, 466 U.S. at 691. In evaluating ineffective assistance of counsel claims, the Court must give consideration to "counsel's overall performance," *Kimmelman v. Morrison*,

477 U.S. 365, 386 (1986), and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689.  Moreover, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694.

### III. DISCUSSION

A district court may deny a Section 2255 motion without a hearing when "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  "'The decision whether to hold a hearing is committed to the district court's discretion, particularly when, as here, the judge who is considering the § 2255 motion also presided over the proceeding in which the petitioner claims to have been prejudiced.'"  *United States v. Orleans-Lindsey*, 572 F. Supp. 2d 144, 166 (D.D.C. 2008), *appeal dismissed*, No. 08-3089, 2009 U.S. App. LEXIS 20833 (D.C. Cir. Sept. 18, 2009) (quoting *Fears v. United States*, No. Civ. A. 06-0086 (JDB), 2006 WL 763080, at *2 (D.D.C. Mar. 24, 2006) (citations omitted)); *see also United States v. Agramonte*, 366 F. Supp. 2d 83, 85 (D.D.C. 2005), *aff'd*, 304 Fed. App'x 877 (D.C. Cir. 2008).  "The judge's own recollection of the events at issue may enable him summarily to deny a Section 2255 motion."  *Agramonte*, 366 F. Supp. 2d at 85 (citing *United States v. Pollard*, 959 F.2d 1011, 1031 (D.C. Cir. 1992), *cert. denied*, 506 U.S. 915 (1992)).  To warrant a hearing, the petitioner's Section 2255 motion must "raise[] 'detailed and specific' factual allegations whose resolution requires information outside of the record or the judge's 'personal knowledge or recollection.'"  *Pollard*, 959 F.2d at 1031 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).

Based on a thorough review of the parties' pleadings and the entire record in the criminal

proceeding, the Court finds that there is no need for an evidentiary hearing on the instant motion at this time.  As explained below, Morrow has not proffered detailed and factual allegations outside of the record such that a hearing is required on the issues raised in his motion.  Accordingly, the Court shall render its findings on these claims based on the parties' pleadings and the record.

Morrow raises 10 ineffective assistance of counsel claims related to counsel allegedly: (1) failing to challenge the violation of his statutory right to a speedy trial prior to trial; (2) failing to raise double jeopardy and multiplicity challenges to the indictment prior to trial, failing to move to dismiss based on this challenge during trial, and failing to raise this challenge at sentencing and on appeal; (3) failing to properly advise Morrow regarding a plea offer extended by the government; (4) failing to request an informant jury instruction at trial; (5) failing to raise a Confrontation Clause challenge to certain evidence during trial and on appeal; (6) failing to properly cross-examine two government witnesses at trial; (7) failing to challenge government misconduct at trial and on appeal; (8) failing to properly challenge juror misconduct and bias at trial and on appeal; (9) failing to argue that the rule of lenity precluded the imposition of certain sentences at sentencing and on appeal; (10) failing to prepare and file a writ of certiorari with the Supreme Court of the United States.  Further, Morrow also asserts that he is entitled to relief based on intervening changes in the law.  The Court shall address each claim in turn.

## A.  *Speedy Trial Challenge*

Morrow alleges that his trial counsel was ineffective by failing to move to dismiss in the instant action based on a violation of the Speedy Trial Act.[3]  Def.'s Memo. at 12-15; Def.'s Reply

---

[3] Morrow only appears to allege a violation of his statutory speedy trial rights and not his constitutional speedy trial rights under the Sixth Amendment.  *See generally Barker v. Wingo*, 407

at 1-3.  Pursuant to 18 U.S.C. § 3161(c)(1), a trial for a defendant who has pled not guilty must commence within 70 days from the filing and making public of the indictment, or from the date that Defendant appeared before a judicial officer of the court in which the charge is pending, whichever is later.  In a case involving multiple defendants, the speedy trial clock resets upon the initial appearance of a new defendant.  *United States v. Van Smith*, 530 F.3d 967, 969-70 (D.C. Cir. 2008).  In other words, all codefendants share the speedy trial computation of the latest codefendant.  *Id.* (quoting *Henderson v. United States*, 476 U.S. 321, 323 n.2 (1986)).  However, pursuant to section 3161(h), there are several scenarios under which the Court may toll this 70-day time period.

In the instant action, Morrow was indicted pursuant to a sealed indictment on August 3, 2004, and arrested on August 9, 2004.  Malvin Palmer was the last of Morrow's codefendants to be arrested and arraigned.  Palmer's arrest and arraignment occurred on August 25, 2004.  Accordingly, August 25, 2004 is the operative date under the Speedy Trial Act for calculating the 70-day period for all codefendants in this matter, *see Van Smith*, 530 F.3d at 969-70, and Morrow's trial commenced on April 5, 2005, 223 days from this date.

However, on September 27, 2004, 33 days from the operative date, the Court held a status hearing with Morrow and his seven codefendants present, to discuss the Government's Notice to the Court of Plan, in Consultation with Defense Counsel, for Future Actions in this Case.  *See* Notice to the Court of Plan, ECF No. [90].  At the hearing, Morrow's counsel, indicated on the record in the presence of Morrow, that this was a complex case under the Speedy Trial Act,

U.S. 514, 530 (1972).  Accordingly, the Court shall address only this issue as it relates to his statutory rights.

allowing for tolling of the Act for a reasonable period of time in order to prepare the case.  Order (Oct. 4, 2004), ECF No. [92].  Indeed, Ms. Hepworth explained on the record in Morrow's presence: "We do not object to the complex case designation. We believe, at least from Mr. Morrow's perspective, it's appropriate."[4]  Tr. 6:20-22 (Sept. 27, 2004), ECF No. [675].

Following the hearing on October 4, 2004, 40 days from the operative Speedy Trial Act date, the Court entered a written order tolling the time period under the Act pursuant to 18 U.S.C. §§ 3161(h)(8)(A), (B)(i), (B)(ii) & B(iv) (2004). Order (Oct. 4, 2004).  Specifically, the Court cited the nature of the case (eight codefendants and an alleged conspiracy to rob six separate banks on six different dates), the possible expert testimony on DNA, hair, fingerprint, and firearm analysis, and the possible testimony of lay witnesses from the banks, as well as the number of potential witnesses at trial (potentially sixty government witnesses).  *Id.* at 1-2.  In its Order, the Court noted that it was "the consensus of the parties and the Court that it would be unlikely that this case would be ready to proceed to trial within the next several months due to the extensive discovery involved, the complexity of the case, and the breadth of forensic evidence requiring expert testimony." *Id.* at 2.

The Court, specifically with the consent of Defendants, their counsel, and the government,

---

[4] In the Government's Notice to the Court of Plan, In Consultation with Defense Counsel, for Future Actions in This Case, filed prior to the hearing, the government noted:

> Mr. Beshouri [codefendant's counsel] informed the government that several of the defense counsel concur that the case is complex under the Speedy Trial Act. Other defense counsel, however, need to speak with their clients about their positions on this issue. They can advise the Court at the status hearing this coming Monday of their position on this matter.

Notice to the Court of Plan, at 3.

ultimately held that: (1) the case was so unusual or so complex, due to the nature of the prosecution that it was unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established under the Speedy Trial Act, 18 U.S.C. § 3161(h)(8)(A),[5] (B)(ii) (2004)[6]; (2) the failure to grant the requested additional time to prepare the case would result in a miscarriage of justice to the Defendants, 18 U.S.C. § 3161(h)(8)(B)(i) (2004)[7]; and (3) the failure to grant the requested additional time would deny the Defendants reasonable time necessary for the effective preparation of the case, taking into account the exercise of due diligence, 18 U.S.C. § 3161(h)(8)(B)(iv) (2004)[8]. *Id.* at 2-3. Based on these findings, the Court

---

[5] Pursuant to 18 U.S.C. § 3161(h)(8)(A) (2004), the statute provides:

Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

[6] Pursuant to 18 U.S.C. § 3161(h)(8)(B)(ii) (2004), a judge considering whether to grant a continuance shall consider "[w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section."

[7] Pursuant to 18 U.S.C. § 3161(h)(8)(B)(i) (2004), a judge considering whether to grant a continuance shall consider "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice."

[8] Pursuant to 18 U.S.C. § 3161(h)(8)(B)(iv) (2004), a judge considering whether to grant a continuance shall consider:

concluded that the ends of justice required that the case proceed to trial outside of the 70-day period prescribed by the Speedy Trial Act.[9]  *Id.* at 3.

Given the Court's specific written findings tolling the time frame under the Speedy Trial Act in compliance with the requirements of 18 U.S.C. § 3161(h) (2004), the Court finds that Morrow's related ineffective assistance of counsel claim fails.  Morrow argues that the requirements of an "ends-of-justice" continuance were not met because the grant of a continuance allowed the government to bolster its case against Morrow by giving the government time to negotiate with codefendants who testified against Morrow.  Def.'s Memo. at 14-15.  While one reason for granting the continuance was to give the prosecution time to prepare because of the complex nature of the case, this characterization is inaccurate because the continuance also specifically was granted to give the defense time to effectively prepare their case and to avoid a miscarriage of justice.  Accordingly, it is clear that the Court granted the continuance only after specifically finding that it benefited both the government and the Defendants.

Morrow also cites *Zedner v. United States*, 547 U.S. 489 (2006), in support of his argument. However, *Zedner* is distinguishable from the instant action.  The Supreme Court in *Zedner*

---

Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex . . . . would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

[9] Morrow seems to indicate in some instances that the Court reached the opposite holding in this Order, i.e., finding that the trial must commence within the 70-day period.  *See* Def.'s Memo. at 13-14.  This is contrary to the plain language of the written order. Order (Oct. 4, 2004), at 3 ("[T]he ends of justice require that this case proceed to trial later than seventy days from the date the Defendants were indicted.").

addressed the propriety of a district court's grant of a continuance when the court did not make express findings on the record either orally or in writing regarding the end-of-justice balance. *Zedner*, 547 U.S. at 506. Here, it is clear that the Court made formal written findings on this issue close in time to the hearing and, as such, *Zedner* is distinguishable.

Finally, Morrow asserts that "at no point did counsel ever explain to Mr. Morrow his right to a speedy trial, or the mandatory dismissal for that violation . . . . Had counsel done so in this case, Mr. Morrow would have insisted that a motion to dismiss was filed." Def.'s Memo. at 15. Even assuming *arguendo* that Morrow's counsel did commit an error by not advising of him of his statutory Speedy Trial rights, and that his counsel misrepresented that she had explained his rights to her client and that her client had consented to the designation of the case as complex, Morrow was not prejudiced by this error. The Court tolled the time under the Speedy Trial Act pursuant to 18 U.S.C. §§ 3161(h)(8)(A), (B)(i), (B)(ii) & B(iv) (2004). None of those provisions require the consent of the defendant. Rather, a party or the Court may move for tolling under these provisions, but the Court applying the appropriate legal standard must determine whether such a continuance is permissible. Accordingly, even if Morrow's counsel had objected to the tolling of the time prior to the entry of the Court's findings, it is not reasonably likely that this objection would have dissuaded the Court from finding that the case was complex and that all parties needed additional time to prepare given that this was a case involving several codefendants alleged to have been involved in a conspiracy that included the armed robbery of six different banks. Further, if Morrow's counsel moved to dismiss the indictment on the basis that there was a violation of the Speedy Trial Act, it is not reasonable to conclude that the Court would have dismissed the indictment given that it followed the required procedures under the Act for tolling. *See* Order (Oct.

13

4, 2004). Finally, the Court notes that Morrow and his codefendants filed 40 substantive pre-trial motions which added to the complexity of the case and independently tolled the Speedy Trial clock.[10] *See* 18 U.S.C. § 3161(h)(1)(F) (2004). Accordingly, the Court concludes that there was

---

[10] Perkins' Mot. for Discovery Stmt. of Co-Defendants and Co-Conspirators, ECF No. [128]; Perkins' Mot. for Disclosure of Favorable Evid. Against Witnesses Not Called to the Stand by Govt., ECF No. [129]; Perkins' Mot. for Disclosure of Identity of Confidential Informants, ECF No. [130]; Perkins' Mot. to Disclose All Instances Where Witnesses were Interviewed Jointly, ECF No. [131]; Perkins' Mot. for Relief from Prejudicial Joinder, ECF No. [211]; Jt. Mot. in Limine to Exclude Alleged Bad Acts and Uncharged Misconduct, ECF No. [134]; Aguiar's Mot. for Pretrial Identification and Production of Jencks Material, ECF No. [135]; Aguiar's Mot. to Sever Defendants and/or Mot. to Sever Counts, ECF No. [136]; Aguiar's Mot. to Disclose Identities of Each Confidential Informant Regardless of if they will be Called for Trial, ECF No. [137]; Burwell's Mot. for Notice of Intent to Introduce Uncharged Misconduct and Prior Convictions, ECF No. [138]; Burwell's Mot. to Compel Disclosure of Info. Regarding Confidential Informants, Witnesses and Cooperating Criminals, ECF No. [139]; Burwell's Mot. to Strike Alias, ECF No. [140]; Burwell's Mot. to Preserve Notes, Report and Evid., ECF No. [141]; Burwell's Mot. to Adopt Mot. filed on behalf of Co-Defendants, ECF No. [142]; Burwell's Mot. to Reveal the Identity of Informant(s) and the Basis of their Reliability, ECF No. [143]; Burwell's Mot. to Sever Count(s) and to Try Co-Defendants Separately, ECF No. [144]; Burwell's Mot. in Limine regarding Video Tape Evid., ECF No. [145]; Palmer's Mot. to Suppress Identification Evid., ECF No. [147]; Palmer's Mot. in Limine to Exclude Def. Marvin Palmer's Incarcerated Status in New York, ECF No. [149]; Palmer's Mot. to Adopt Codefendant's Mots., ECF No. [151]; Stoddard's Mot. for Bill of Particulars, ECF No. [152]; Stoddard's Mot. for Pretrial *James* Hrg., ECF No. [153]; Stoddard's Mot. to Strike, ECF No. [154]; Stoddard' Mot. to Bifurcate Trial, ECF No. [155]; Stoddard's Mot. to Sever Counts, ECF No. [156]; Stoddard's Mot. to Dismiss Count One of the Indictment, ECF No. [157]; Stoddard's Mot. to Suppress, ECF No. [158]; Stoddard's Mot. to Suppress Identification Evid., ECF No. [159]; Stoddard's Mot. to Suppress Evid., ECF No. [160]; Stoddard's Mot. to Sever Defs., ECF No. [161]; Morrow's Mot. to Suppress Identification Evid., ECF No. [162]; Morrow's Mot. to Identify Witnesses with Juvenile Adjudications and pending Juvenile Proceedings and to Inspect Juvenile Files, ECF No. [164]; Jt. Mot. for Relief from Improper Joinder, and Mot. for Severance of Offenses and/or Defs., ECF No. [165]; Jt. Mot. for In Camera Review of Grand Jury Testimony to Determine the Existence of a Racketeering Enterprise, ECF No. [166]; Perkins' Mot. to Adopt Mots. Filed on Behalf of Co-Defendants, ECF No. [167]; Perkins' Mot. to Suppress All Evid. Seized pursuant to a Constitutionally Defective Warrant, ECF No. [168]; Sld. Jt. Def. Motion to Dismiss Indictment, ECF No. [172]; Aguiar's Mot. to Prevent Govt. from Introducing Fed. R. 404(b) Evid. Against Def., ECF No. [464]; Perkins' Mot. for Change of Venue, ECF No. [196]; Palmer's Mot. for Determination of Crawford Parameters, ECF No. [226]. Additionally, the government also filed one pre-trial motion. Govt.'s Motion in Limine and First Notice of Intention to Introduce Evid.

no Speedy Trial Act violation in the instant action regardless of the consent issue.

Given that the Court followed the required process for tolling time under the Speedy Trial Act regardless of whether Morrow consented to the tolling, Morrow cannot establish that his counsel acted in an objectively unreasonable manner by failing to move to dismiss the case on the basis that the Court violated the 70-day requirement of the Act, nor can he establish that there is a reasonable likelihood of a different result had trial counsel made such a motion.[11]   Accordingly, Morrow's ineffective assistance of counsel claim premised on trial counsel's failure to move to dismiss the instant action on the basis of a Speedy Trial Act violation is without merit.

### B. *Double Jeopardy and Multiplicity Challenges*

Morrow next argues that his trial counsel was ineffective by failing to raise double jeopardy and multiplicity challenges to the indictment prior to trial and for failing to move to dismiss the indictment based on this challenge.   Def.'s Memo. at 16-19, 25, 29-30; Def.'s Reply at 3-5. Specifically, Morrow objects to Count I of the indictment, conspiracy to participate in a racketeer influenced corrupt organization ("RICO") pursuant to 18 U.S.C. § 1962(d), which Morrow argues is multiplicitous of the other charged robbery offenses.   Def.'s Memo. at 16-18, 21; Def.'s Reply at 3-4.   Morrow also argues that his multiple charges under 18 U.S.C. § 924(c), using and carrying a firearm during and in relation to a crime of violence, were improper because they arise out of the same conspiracy.   Def.'s Memo. at 17-19.   Morrow's claims for ineffective assistance of counsel

---

Pursuant to Fed. R. Evid. 404(b), ECF No. [133].

[11] Morrow also appears to argue that the Court tolled the time under the Speedy Trial Act due to the government's filing of a superseding indictment.   Def.'s Memo. at 14.   However, it is clear from the record that this was not the basis for the tolling and rather, the tolling was done pursuant to the Court's findings under 18 U.S.C. § 3161(h)(8) (2004).

on these issues fail because: (1) his trial counsel did challenge the RICO charge, Count I, prior to trial on the grounds that it was multiplicitous, and Morrow raises no additional valid arguments that his counsel should have advanced; and (2) Morrow's four charged violations under 18 U.S.C. § 924(c) do not violate the Double Jeopardy clause because they are based on distinct, separately charged criminal offenses that occurred on different dates.

Turning first to the RICO charge, Morrow's codefendant filed a Joint Defense Motion to Dismiss the Indictment due to Multiplicitous and Duplicitous Charging prior to trial which the Court considered on Morrow's behalf. Sealed Jt. Def.'s Mot. to Dismiss Indictment, ECF No. [172]. The Court issued a Memorandum Opinion on March 16, 2005, finding that the arguments in that motion were without merit. Memo. Op. (Mar. 16, 2005), at 13-22, ECF No. [437]. Morrow appears to raise two arguments as to the deficiency of the arguments raised in the motion: (1) trial counsel should have relied on different case law to establish that the RICO charge was multiplicitous of other charged offenses; and (2) trial counsel should have argued that the RICO charge and the charges of armed robbery brought against him were multiplicitous. The Court shall address each argument in turn.

Morrow asserts that the RICO charge required proof that Morrow: committed the robberies at issue; protected members of the enterprise; maintained weapons, body armor, and money of the enterprise in safe places; and retaliated against persons who interfered with the operation of the enterprise. Morrow argues that this conduct also forms the bases of other charged offenses for which Morrow was convicted and, accordingly, the RICO charge violates the Double Jeopardy clause. Def.'s Memo. at 16. Morrow provides a lengthy quote from the Second Circuit's holding

16

in *United States v. Basciano*, 599 F.3d 184 (2d Cir. 2010), in support of his argument.[12]  However, *Basciano* is distinguishable from the instant action because in that case, the Second Circuit addressed the issue of bringing multiple RICO charges against the same defendant based on the same enterprise. *See id*. at 188-89 (indicating that the defendant was indicted for one count of substantive racketeering, and three counts of conspiracy to murder in the aid of racketeering, and that the government conceded that the racketeering charges stemmed from the same enterprise but argued that they involved different patterns of racketeering).  In contrast, the instant action does not raise the same concerns as those in *Basciano* because Morrow was charged with one RICO charge related to one enterprise.  Accordingly, the Court is not persuaded that Morrow's counsel was ineffective by failing to make this additional argument on Morrow's behalf.

Further, to the extent that Morrow may be arguing that the RICO charge (Count I), and the charges for the armed robbery of the Bank of America on or about January 22, 2004 (Count III), armed robbery of the Riggs Bank on or about March 5, 2004 (Count VII), armed robbery of the Industrial Bank on or about June 12, 2004 (Count X), armed robbery of the SunTrust Bank on or about June 29, 2004 (Count XV), and assault with intent to kill while armed of Edwin Arrington on or about May 15, 2004 (Count XIX), are multiplicitous charges, an argument that does not appear to have been advanced in his pre-trial motion, the Court finds that this argument also is without merit.  Multiplicitous charges "improperly prejudice a jury by suggesting that a defendant has committed not one but several crimes." *United States v. Reed*, 639 F.2d 896, 904 (2d Cir. 1981). "An indictment is multiplicitous, and thereby defective, if a single offense is alleged in a

---

[12] The Court notes that the trial in the instant action took place in 2005, and *Basciano* was decided in 2010.

number of counts, unfairly increasing a defendant's exposure to criminal sanctions." *United States v. Anderson*, 39 F.3d 331, 353-54 (D.C. Cir. 1994), *rev'd en banc*, 59 F.3d 1323 (D.C. Cir. 1995) (en banc).   Under *Blockburger v. United States*, 284 U.S. 299 (1932), the relevant test for determining whether two counts of an indictment are multiplicitous is as follows: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each [count] requires proof of an additional fact which the other does not." *Id.* at 304.   However, "the *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history."   *Garrett v. United States*, 471 U.S. 773, 779 (1985).   Indeed, "the *Blockburger* presumption must of course yield to a plainly expressed contrary view on the part of Congress." *Id.*   Accordingly, it is particularly relevant to the instant action that "Congress intended that a RICO violation be a discrete offense that can be prosecuted separately from its underlying predicate offenses."  *United States v. Crosby*, 20 F.3d 480, 484 (D.C. Cir. 1994).

Here, Count I charges racketeering acts that require the government to establish an "enterprise" and the "continuing" commission of stated offenses such as armed robbery and acts involving murder. In contrast, Counts III, VII, X, and XV are charges for the substantive crime of armed robbery on different dates in different locations.  Count XIX was a charge for assault with intent to kill while armed, a crime separately charged under the D.C. Code.   Given the clear congressional intent to allow RICO violations to be prosecuted separately from underlying offenses, the Court finds that Counts I and III, VII, X, XV, and XIX are not multiplicitous in violation of the Double Jeopardy clause. Accordingly, the Court cannot conclude that trial counsel acted in an objectively unreasonable manner by not raising this specific challenge to Morrow's

indictment, nor can the Court conclude that appellate counsel was deficient for failing to do so.

Turning to Morrow's argument regarding Counts IV, VIII, XI, and XVI, each for using and carrying a firearm during a crime of violence under 18 U.S.C. § 924(c), Morrow asserts that he was impermissibly charged with multiple § 924(c) charges arising out of the same conspiracy in violation of the Double Jeopardy clause.[13]  Morrow cites the D.C. Circuit's ruling in *United States v. Anderson*, 59 F.3d 1323 (D.C. Cir. 1995) (en banc), in which the Circuit held that a defendant could not be convicted of multiple counts of using or carrying a firearm during and in relation to a drug trafficking crime under 18 U.S.C. § 924(c)(1), if each of the charges was tied to the same predicate offense, in that case a narcotics conspiracy.  *Anderson*, 59 F.3d at 1324-25, 1334.  In *Anderson*, the D.C. Circuit ultimately held that "only one § 924(c)(1) violation may be charged in relation to one predicate crime."  *Id.* at 1334.  Morrow also cites to the D.C. Circuit's holding in *United States v. Wilson*, 160 F.3d 732 (D.C. Cir. 1998), that a defendant cannot be convicted of more than one offense under 18 U.S.C. § 924(c), based on one use of one firearm even if he was convicted of two underlying offenses in relation to that conduct, first-degree murder

---

[13] While this does not appear to be the crux of Morrow's argument in the instant motion, the Court notes that in its Memorandum Opinion, it addressed the issue of "whether the different alternatives under 18 U.S.C. § 924(c) – e.g., use or carry, possess in furtherance of, brandish, or discharge a firearm – are separate offenses, as the different alternatives carry different punishments." Memo. Op. (Mar. 16, 2005) at 19.  This issue was considered on behalf of Morrow because it was raised in the motion and, thus, any claim for ineffective assistance of counsel on this issue does not have merit.  Ultimately, the Court noted that there may be a duplicity issue with these counts because the relevant provisions of the charged offense criminalize two separate offenses: (1) *using or carrying* a firearm *during and in relation* to an applicable crime of violence, and (2) *possessing* a firearm *in furtherance* of an applicable crime of violence.  *Id.* at 20.  However, the Court found that the government could proceed with this charge by employing use of a special verdict form to ensure that the jury considered the different alternatives separately.  *Id.*; *see also* Verdict Form, at 3-8.

and killing a witness with the intent to prevent him from testifying.  *Id.* at 748-50.  Notably, both *Anderson* and *Wilson* were decided based on the rule of lenity, not on double jeopardy grounds. *Anderson*, 59 F.3d at 1333; *Wilson*, 160 F.3d at 749; *see also United States v. Kelly*, 552 F.3d 824, 830 n.5 (D.C. Cir. 2009) (noting that the holding in *Wilson* was based on the rule of lenity). Moreover, *Anderson* and *Wilson* also are distinguishable from the instant action because, here, Morrow was charged with four violations of § 924(c) based on four distinct armed robberies for which he was separately charged and convicted in violation of 18 U.S.C. §§ 2113(a) & (d), 2 (Counts III, VII, X, and XV).

"[The Double Jeopardy clause] prohibits the executive branch from doubling down, bringing multiple prosecutions or seeking successive punishments against a defendant for the *same criminal offense*."  *United States v. Cejas*, 761 F.3d 717, 730 (7th Cir. 2014).  Here, Morrow was separately charged with and convicted of using or carrying a firearm during and in relation to a crime of violence during bank robberies on January 22, 2004 (Count IV), March 5, 2004 (Count VIII), June 12, 2004 (Count XI), and June 29, 2004 (Count XVI).  Each of the four charged § 924(c) violations is based on a different criminal offense, i.e., the separate charged bank robberies, and, thus, do not violate the Double Jeopardy clause.  *Id.* at 731 (rejecting defendant's argument that his two § 924(c) convictions violated the Double Jeopardy clause because his possession of the gun was continuous and uninterrupted, and holding that his conviction of the two charges was proper because he was convicted of possessing a gun during his drug activity and separately for possessing a gun during his criminal conduct on a different occasion approximately one week later); *United States v. Davis*, 306 F.3d 398, 418 (6th Cir. 2002), *cert. denied* 537 U.S. 1208 (2003) ("Because Congress expressly provided that courts may impose punishment for a violation of §

924(c) in addition to the punishment imposed for the predicate felony, Defendant's double

jeopardy arguments lack merit."); *United States v. Rose*, 251 Fed. App'x 708, 710 (2d Cir. 2007),

*cert. denied* 552 U.S. 1238 (2008) ("Here, [defendant's] four Section 924(c) convictions arose out

of four separate bank robberies, and the convictions were therefore proper.").   Accordingly,

Morrow's ineffective assistance of counsel claim as to his four § 924(c) convictions fails because

he has not demonstrated that he was prejudiced by trial or appellate counsels' failure to raise this

issue.   Further, the Court concludes that Morrow's counsel did not render him ineffective

assistance because his argument with relation to the four charged violations of § 924(c) is without

merit.

For the reasons described, the Court finds that Morrow's ineffective assistance of counsel

claims related to the multiplicity and double jeopardy challenges to the indictment are without

merit.

### C.   *Plea Offer*

Morrow alleges that his trial counsel failed to properly explain to him the sentencing

differences between accepting a plea offer and proceeding to trial.   Morrow submitted an affidavit

that was filed alongside his § 2255 motion attesting to the following facts:

> [C]ounsel failed to inform me of the correct consequences of proceeding to trial
> versus pleading guilty. Instead, counsel informed me that I faced a life sentence
> regardless of whether I pled guilty or was convicted following a jury trial.  Counsel
> also never told me that a second § 924(c) charge carried a mandatory minimum
> sentence of twenty-five years, and/or that a subsequent conviction would carry a
> sentence of life. Had counsel properly informed me of the likely consequences of
> trial, and that I could have entered a guilty plea and avoided the life sentence
> imposed after conviction by the jury, as did several of my co-defendants, I would
> have pled guilty pursuant to a plea agreement instead of proceeding to trial.
>
> . . .

> Counsel refused to discuss the government's proposed plea agreement with me. In fact, I have yet to see a copy of that agreement. In addition, counsel failed to inform me that the decision whether to plead guilty belonged solely to me. When I inquired of counsel what my sentence would be if I pled guilty, as opposed to the sentence I would receive if found guilty following trial, counsel informed me that there would no noticeable difference. When I pressed counsel for a more definite answer, counsel simply replied that it depends of [sic] which charges I pled guilty to.

Def.'s Declaration ¶¶ 4-5, ECF No. [774-2].  For the reasons described herein, the Court finds that Morrow's ineffective assistance of counsel claim fails because the sentencing consequences resulting from the plea offer and from a possible conviction were discussed on the record in open court in Morrow's presence and Morrow indicated that he had discussed the sentencing consequences with his counsel.  Further, the Court finds that Morrow's ineffective assistance of counsel claim fails because Morrow was not charged with any violations of 18 U.S.C. § 924(c), using and carrying a firearm during and in relation to a crime of violence, at the time that the plea offer was extended to and rejected by him.  Finally, the Court finds that Morrow was not prejudiced by his trial counsel's alleged failure to inform him of the fact that the decision to plead guilty or proceed to trial belonged solely to him.

A criminal defendant's right to effective assistance of counsel under the Sixth Amendment extends to the plea-bargaining process.  *Lafler v. Cooper*, -- U.S. --, --, 132 S. Ct. 1376, 1384 (2012).  The Court employs the two-part *Strickland* test in analyzing an ineffective assistance of counsel claim arising out of the plea negotiations.  *Id.*  First, a defendant must show that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms.  *United States v. Hurt*, 527 F.3d 1347, 1356 (D.C. Cir. 2008).  This Circuit has recognized that a lawyer who makes a plainly incorrect estimate of a likely sentence due to

ignorance of applicable law of which he should have been aware while advising his client on the prudence of accepting a plea offer falls below the threshold of reasonable performance within the meaning of the *Strickland* standard. *United States v. Booze*, 293 F.3d 516, 518 (D.C. Cir. 2002). Second, a defendant must show that the error caused him prejudice. *Hurt*, 527 F.3d at 1356. In order to establish prejudice:

> [A] defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S. Ct. at 1385.

The record reflects that plea offers were extended to Morrow and his codefendants, and expired in September 2004. Indeed, during a status hearing held on September 27, 2004, the prosecutor indicated that plea offers had been extended to all the defendants and they expired on that day. Tr. 10:20-22, 12:13-23 (Sept. 27, 2004). It was explained at the hearing:

> MS. KITTAY [government counsel]: Well, because the plea offers will expire today --
>
> THE COURT: I take it by "today," do you mean that they have to accept them or do they have to indicate that they are interested and you will have some further discussions about them?
>
> MS. KITTAY: Well, initially, it was the former, but it's become the latter, and there may be some discussion through the course of this week.
>
> I would imagine if we came – at this point, Your Honor, I would probably insist that if there are to be any pleas, that they be entered before this court within the next week or two; probably more realistically next week.

Tr. 13:12-24 (Sept. 27, 2004); *see also id.* at 21:11-19 (the prosecutor noting that the plea offers

would be "off the table and will expire" the moment that the prosecutors left the courtroom that

day, unless the defendant's counsel had contacted the government to further negotiate).

At the September 27, 2004, hearing, the prosecutor explained that after final decisions on

these plea offers were reached, the government intended to file a superseding indictment that

would include a charge for conspiracy to conduct and participate, directly and indirectly, in the

affairs of an enterprise, through a pattern of racketeering activity ("RICO conspiracy") and charges

for two incidents of assault. *Id.* at 11:16-19. Specifically, the prosecutor noted that the government

wanted to extend plea offers that did not include the RICO conspiracy charge because once the

government proceeded towards filing a superseding indictment, "it [would] in many ways restrict

[the government's] discretion with respect to these plea offers." *Id.* at 12:13-20. During that

hearing, the Court set a next hearing date in anticipation of the fact that trial dates would be set

once the plea offers were resolved. *Id.* at 20:12—21:10.

On January 31, 2005, the Court also held a hearing to discuss the pleas offers extended to

Morrow and his codefendants on the record.[14] Tr. 10:2-4 (Jan. 31, 2005). During that hearing, the

---

[14] As the Court explained:

[T]he whole purpose of this [hearing] is to make sure on the record that there's been a discussion with each of the clients as to what the plea offer would mean in terms of sentencing guidelines, what the plea offer would mean if they got convicted of all of it, what the differences would be in terms of potential sentences. If you disagree with the way the government has calculated [the potential sentence], you would put that on the record.

This is so that there – if it doesn't occur, that we go to trial, somebody gets convicted and then afterwards it is raised in a 2255 that they did not get a full discussion of the plea.

So this is my best way of making sure that everybody is on the same page, that

24

Court discussed the plea offer with Morrow, Morrow's trial counsel, and the prosecutor on the record and Morrow indicated that he did not accept the plea offer.  As the prosecutor explained at the hearing, the government extended Morrow an offer that would have required him to plead guilty to one count of conspiracy to conduct and participate, directly and indirectly, in the affairs of an enterprise, through a pattern of racketeering activity ("RICO conspiracy"), and one count of using and carrying a firearm during and in relation to a crime of violence (18 U.S.C. § 924(c)).  *Id.* at 41:23-24.

The parties then discussed the potential sentencing implications of accepting the plea offer as opposed to proceeding to trial.  After the prosecutor explained that the guideline range of the term of imprisonment under the plea offer would be 447 to 468 months and specifically indicated that the one § 924(c) violation would require a mandatory sentence of 360 months, the Court inquired of Morrow's counsel and Morrow who was placed under oath:

> THE COURT: Is this the discussion that you had with your client or were there differences?
>
> MS. HEPWORTH: Yes, Your Honor, we had this discussion and other discussions about the possibility of negotiating further with the government or other options that were available to Mr. Morrow and **Mr. Morrow's position has always been that he is innocent of these charges and a victim of the government informant.**
>
> THE COURT: Did you discuss the difference between a RICO conspiracy and another type of conspiracy, 371 or the 924(c)?
>
> MS. HEPWORTH: Yes, Your Honor.
>
> THE COURT: What about in terms of that the mandatory minimum sentence means

---

whatever the government has said everybody hears, whatever defense counsel has said and your client, so that there's no issues at a later point.

Tr. 15:6-21 (Jan. 31, 2005).

that it cannot be reduced by any other calculation and also presumably the consecutive aspect of it?

MS. HEPWORTH: That's correct, Your Honor, we considered all of those.

THE COURT: Is that the discussion that you had, Mr. Morrow?

DEFENDANT MORROW: Yes, Your Honor.

THE COURT: I take it he was also informed that it was all three people how [sic] to plead in order to get the plea, is that correct?[15]

DEFENDANT MORROW: Yes, Your Honor.

Id. at 42:19—43:17.  The prosecutor then went on to explain that Morrow's sentencing exposure

under the guidelines if he proceeded to trial:

MS. KITTAY [government counsel]: If he goes to trial, Your Honor, the only risk he runs is that perhaps he would not get the three levels of acceptance and he might not get but the one count of 924(c). **If he was convicted of more than one 924(c), it goes from mandatory 30 years to a mandatory life.**

But calculated again without the mandatory life without the three level for acceptance, his sentencing range would be 481 months to 511 months.

MS. HEPWORTH: I should point out, Your Honor, that we believe the criminal history category may be I. He has one prior conviction for which he was not sentenced to a term of imprisonment.

THE COURT: You have a different discussions with him about it then?

MS. HEPWORTH: Well, we had both. I mean, we understand the vagaries of whether or not something might be counted especially in terms of he might have been convicted, these offenses may have been calculated to have occurred during his pretrial release in that case. So in light of that, it could be a criminal history II, could be a criminal history I. However, we discussed both.

---

[15] The prosecutor indicated on the record that Morrow's plea offer was "wired" to the plea offers of two of his codefendants, meaning that the government would only have proceeded with Morrow's plea if the two other codefendants also accepted the plea offers extended to them by the government. Tr. 41:24—42:5 (Jan. 31, 2005).

THE COURT: All right, Mr. Morrow, is that correct?

DEFENDANT MORROW: Yes, Your Honor

THE COURT: Do you have any questions of the court or your counsel at this point?

DEFENDANT MORROW: No, Your Honor.

**THE COURT: What was your decision about the plea?**

**DEFENDANT MORROW: I'm not taking it, Your Honor.**

*Id.* at 43:20—44:22 (emphasis added).  Further, the government indicated that it did not intend to renew any of the plea offers discussed, that no plea offers were outstanding at the time of the hearing, and that any future plea offers would still require that Morrow plead to at least the RICO count and one count of a violation of § 924(c) and also would require that he cooperate with the government.[16]  *Id.* at 10:2-19, 16:16-19.

Turning to Morrow's first argument that his trial counsel improperly informed him that he would be facing a term of life imprisonment whether he pled or was convicted, the record reflects that Morrow was in fact advised that if he accepted the plea agreement, the guideline range for his term of imprisonment would be 447 to 468 months.  Further, the record reflects that he was advised that if he chose to proceed to trial, he possibly would face a life sentence.  After being presented with this information, Morrow indicated on the record and under oath that he did not accept the plea offer.  Accordingly, the Court cannot conclude that his counsel's performance was deficient

---

[16] The government also indicated that the plea offers were made in part to obviate the need to conduct time-intensive laboratory tests and since the results of those tests had been returned, the government indicated that it would not renew the plea offers as they were originally offered because at the time of the hearing, the results of the tests had been received.  *Id.* at 9:22–10:4.

in any way because he was advised of the potential sentences if he accepted the plea offer and if he chose to proceed to trial. Further, the Court cannot find that Morrow was prejudiced in any way by the alleged failure of his counsel to properly advise him of the sentencing differences because, even after being presented with this information, he indicated that he rejected the plea offer.

Turning to Morrow's next argument, the Court shall accept only for the purposes of this analysis that Morrow's trial counsel did not explain the sentencing implications of multiple violations of § 924 to Morrow prior to him rejecting the plea offer. Nonetheless, the Court cannot conclude that Morrow's trial counsel rendered him ineffective assistance of counsel for failing to explain the sentencing implications of convictions for multiple violations of § 924 at a time when Morrow was not charged with these violations. As previously discussed, the plea offer extended to Morrow expired following the status hearing held on September 27, 2004. At that time, Morrow was charged pursuant to the first superseding indictment filed on August 5, 2004. Accordingly, when Morrow rejected the plea offer extended by the government, he was charged only with one count of conspiracy to commit offenses against the United States, that is, armed robberies of banks the deposits of which were then insured by the Federal Deposit Insurance Corporation (18 U.S.C. § 371) and four counts of armed bank robbery (18 U.S.C. §§ 2113(a) & (d), 2). Superseding Indictment (Aug. 5, 2004). On September 27, 2004, Morrow rejected the government's offer that would have required him to plead guilty to a RICO conspiracy charge as well as one count of using and carrying a firearm during and in relation to a crime of violence pursuant to 18 U.S.C. § 924(c). Tr. 41:23-24 (Jan. 31, 2005). As previously mentioned, this offer was made in contemplation of the government filing a superseding indictment to add more charges, including a RICO conspiracy

28

charge and the charges for using and carrying a firearm during a crime of violence, if the plea offers were rejected.  On November 9, 2004, after the plea offers were rejected by Morrow and his codefendants with whom he was tried, the government filed a second superseding indictment, charging Morrow with the same five charges from the earlier indictment as well as the RICO conspiracy charge (18 U.S.C. § 1962(d)), four counts of using and carrying a firearm during and in relation to a crime of violence (18 U.S.C. § 924(c)), four counts of unlawful possession of a firearm by a person convicted of a crime punishable by imprisonment for a term exceeding one year (18 U.S.C. § 922(g)(1)), and two counts of assault with intent to kill while armed (D.C. Code §§ 22-401, -1805, & -4502).  *See* Superseding Indictment (Nov. 9, 2004).  Morrow was ultimately convicted after trial of thirteen of the fourteen charges brought against him.

The Court concludes that Morrow's counsel's performance did not fall below an objective standard of reasonableness under prevailing professional norms by failing to explain to him the sentencing implications of violations to which he was not charged at the time that the plea offer was extended and expired without acceptance.  Notably, the prosecutor indicated on the record during that hearing in Morrow's presence: "If he was convicted of more than one 924(c), it goes from a mandatory 30 years to a mandatory life."  Tr. 43:23-24 (Jan. 31, 2005).  Further, Morrow's counsel indicated that she had discussed the potential § 924(c) violations, and Morrow confirmed when asked that this was the conversation that he had with his attorney.  *Id.* at 43:2-13.  Accordingly, Morrow's ineffective assistance of counsel claim relating to his trial counsel's alleged failure to inform of the sentencing consequences of multiple convictions under § 924(c), first charged on November 9, 2004, prior to the expiration of the plea offer on September 27, 2004, is without merit.

29

Morrow next argues that his trial counsel never advised him that the decision whether or not to plead guilty belonged solely to him. The Court finds this argument is without merit as the Court addressed this issue during the January 31, 2005, hearing. Prior to scheduling the January 31, 2005, hearing, the Court explained on the record in open court in Morrow's presence:

> The one thing, I was trying to recall as to whether we had actually gone through an inquiry about each of the pleas or not the last round. If we have not, I do wish to put on the record – and we need to do it for each of the defendants – what the plea offer, whatever the last one is, what it means sentencing guideline-wise if you go to trial and get convicted versus what it is for the plea.
>
> **The defendants can make their own decision. This isn't in any way to force you to do something. But I want to make sure there's no dispute at a later point as to what the plea offer was, what your position was, what discussions there would be between both the government counsel and defense counsel as to what they think the sentencing guidelines ranges would be.**

Tr. 8:22—9:9 (Dec. 21, 2004) (emphasis added). Indeed, at the commencement of the hearing where the pleas were placed on the record, the Court again described the purpose of the hearing and indicated that plea decision was that of the defendants: "[A]s I said, the court doesn't get involved with what gets offered or rejected. All I want to do is to make sure that all of these options are discussed, **presented to the defendants and that you have the option of making your own decision about it in consultation with your lawyer**." Tr. 17:8-13 (Jan. 31, 2005).

The Court concludes that, even assuming *arguendo* that Morrow's counsel failed to advise him that it was solely his decision whether or not to accept the government's plea offer, the Court finds that Morrow has not established that he was prejudiced by his counsel's alleged failure to advise him of this. First, the Court notes that it is clear from the record that at a minimum Morrow was advised on two separate occasions by the Court that it was his decision whether or not to

accept the plea.  Furthermore, after being advised that he could make his own decision about the

plea offer and after the terms of plea offer were placed on the record, Morrow expressly indicated

to the Court that he did not accept the plea offer extended to him, that he had discussions with his

trial counsel about the plea offer, and that he did not have any questions.  Accordingly, the Court

cannot conclude that, but for the ineffective advice of counsel, Morrow would have accepted the

plea offer if he had been specifically advised that it was a decision that rested with him because he

rejected the plea offer after being advised by the Court that it was his decision.

Ultimately, the record reflects and Morrow himself acknowledged under oath that he had

sufficient discussions with his trial counsel about the plea offer that was extended to him by the

government.  Further, Morrow indicated his desire to reject the plea offer because he asserted that

he was innocent of the charged offenses.  Accordingly, for the reasons described, the Court finds

that Morrow's ineffective assistance of counsel claims related to his plea offer are without merit.

### D. *Informant Jury Instruction*

Morrow next argues that his trial counsel rendered him ineffective assistance of counsel by

failing to request an "informant jury instruction."  Specifically, Morrow asserts "the jury need[ed]

to be instructed to scrutinize the informant testimony more carefully than other witnesses, even

biased witnesses, because of the potential for perjury born out of self-interest."  Def.'s Memo. at

24.  Morrow points to the testimony of two codefendants turned government witnesses in relation

to this claim.  *Id.*

Morrow's claim fails because the record reflects that the Court did, in fact, give instructions

regarding witnesses with plea agreements and witnesses who are accomplices.  The instructions as

read during trial follow:

Now, you've heard evidence that Noureddine Chtaini, Omar Holmes and Antwon Perry each entered into separate plea agreements with the government, pursuant to which each of these witnesses agreed to testify truthfully in this case, and the government agreed to dismiss charges against him and/or decline prosecution of charges against him, and bring the witness's cooperation to the attention of the sentencing court on the remaining charges.

The government is permitted to enter into this kind of plea agreement. You in turn may accept the testimony of such a witness and convict the defendant on the basis of this testimony alone, if it convinces you of the defendant's guilt beyond reasonable doubt.

A witness who has entered into a plea agreement is under the same obligation to tell the truth as is any other witness, because the plea agreement does not protect him against prosecution for perjury or false statement, should he lie under oath.

However, you may consider whether a witness who has entered into such an agreement has an interest different from any other witness. A witness who realizes that he may be able to obtain his own freedom or receive a lighter sentence by giving testimony may have a motive to lie.

The testimony of a witness who has entered into a plea agreement should be received with caution and scrutinized with care. You should give the testimony such weight as in your judgment it's fairly entitled to receive.

Now, you've also heard that Omar Holmes and Noureddine Chtaini were accomplices. Accomplices in the commission of a crime are competent witnesses, and the government has the right to use them as witnesses. An accomplice is anyone who knowingly and voluntarily cooperates with, aids, assists, advises or encourages another person in the commission of a crime, regardless of his degree of participation.

The testimony of an alleged accomplice should be received with caution and scrutinized with care.  You should give it such weight as in your judgment it's fairly entitled to receive. If the testimony of an alleged accomplice is not supported by other evidence, you may convict the defendant upon that testimony only if you believe that it proves the guilt of the defendant beyond a reasonable doubt.

Tr.  7996:1–7997:16 (Jun. 21, 2005).

Accordingly, Morrow's ineffective assistance of counsel claims fail on this issue because the Court did give the relevant instruction.

### E. *Confrontation Clause Challenge*

Morrow next alleges that his trial and appellate counsel rendered ineffective assistance of counsel by failing to raise a Confrontation Clause challenge to records and affidavits admitted into evidence at trial to establish that the banks that were robbed were Federal Deposit Insurance Corporation ("FDIC") insured, one of the elements of Count II.  Def.'s Memo. at 25-26, 35. Specifically, Morrow objects to the admission of documents establishing the insured status of four banks – Bank of America, Riggs Bank, Chevy Chase Bank, and SunTrust – along with affidavits attesting to the fact that the documents were official records of the FDIC; the records and accompanying affidavits were admitted into evidence at trial without objection. *See* Ex. CCB-001 (Proof of Insured Status for Chevy Chase Bank), ECF No. [837-1]; RB-001 (Proof of Insured Status for Riggs Bank), ECF No. [837-2]; BOA-001 (Proof of Insured Status for Bank of America), ECF No. [837-3]; SUN-001 (Proof of Insured Status for SunTrust Bank), ECF No. [837-4].  The Court finds that this claim is without merit for the several reasons described below.

First, Morrow's claim fails because the official records and accompanying affidavits were not testimonial and, thus, are not grounds for Confrontation Clause challenges. As the government properly points out, the records themselves were admitted into evidence under the public records exception to the hearsay rule.  *See* Fed. R. Evid. 803(8) (Hearsay Exception for Public Records). Further, the affidavits were admitted pursuant to Federal Rule of Evidence 902(4), to establish that the evidence was self-authenticating as certified copies of public records.

Morrow relies on the Supreme Court's holding in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), in support of his Confrontation Clause argument.  In *Melendez-Diaz*, the Supreme Court held that affidavits showing the results of forensic analyses performed on seized substances

33

are testimonial statements and, accordingly, analysts are witnesses under the Confrontation Clause of the Sixth Amendment. *Id.* at 309-11. The Court clarified that affidavits "'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,'" *id.* at 311 (quoting *Crawford v. Washington*, 541 U.S. 36, 52 (2004)), are testimonial statements and, accordingly, the authors of such affidavits are witnesses for the purposes of the Confrontation Clause of the Sixth Amendment. *Id.* at 311. The Court found that "[a]bsent a showing that the [authors of the affidavits] were unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to 'be confronted with' the [authors of the affidavits] at trial.'" *Id.* In drawing a connection between the affidavits at issue in *Melendez-Diaz*, and the affidavits certifying the FDIC records in this instant action, Morrow argues that his trial counsel erred by failing to raise a Confrontation Clause challenge to the admissibility of the affidavits reflecting that the banks were insured by the FDIC because the authors of the affidavits did not testify at trial. The Court finds that this argument fails based on the relevant case law on this issue.

Indeed, the Supreme Court in *Melendez-Diaz* appeared to distinguish between situations in which an affidavit is used to authenticate an otherwise admissible record from an affidavit created for the sole purpose of providing evidence against a defendant. *See Melendez-Diaz*, 557 U.S. at 322-23. This Court itself has held that an affidavit certifying the authenticity of a record is not testimonial and, accordingly, not subject to the Confrontation Clause. As this Court held, "[i]t is the records, *not* the certification, that are introduced into substantive evidence against the defendant during trial. The certifications at issue are simply 'too far removed from the 'the principal evil at which the Confrontation Clause was directed' to be considered testimonial.'"

*United States v. Edwards*, Crim. Case No. 11-129-1, 1, 11 (CKK), 2012 WL 5522157, at *2 (D.D.C. Nov. 15, 2012) (quoting *United States v. Ellis*, 460 F.3d 920, 920 (7th Cir. 2006)).  The Court finds the affidavits were not testimonial within the meaning of the Confrontation Clause because the affidavits in question were created only to certify the authenticity of the public records, and not to provide substantive evidence against Morrow at trial.

Second, Morrow's claim fails because there was independent testimony at trial that each of the four banks were FDIC-insured and Morrow's counsel was presented with the opportunity to cross-examine these witnesses on the issue.  Tr. 1216:6-21 (Apr. 18, 2005) (Testimony of Viola J. Scott, banking center manager at Bank of America branch); Tr. 1463:23—1464:10 (Apr. 19, 2005) (testimony of Ricardo Young, assistant manager at Riggs Bank branch); Tr. 1543:5-19 (Apr. 20, 2005) (Testimony of Jacqueline Caldwell, bank manager at Chevy Chase Bank branch in Hyattsville, MD);  Tr. 1634:15-23 (April 20, 2005) (Testimony of Curtis Oliver, branch manager at Chevy Chase Bank branch in Silver Hill, MD);   Tr. 2168:11—2169:2 (Apr. 25, 2005) (Testimony of Charlene Hollings, branch manager of SunTrust Bank branch).  Finally, Morrow's claim fails because he has not pointed to any evidence that his counsel failed to present that refuted the assertion that the banks were in fact FDIC-insured, nor does Morrow himself at this juncture appear to be claiming that the banks were not FDIC-insured.[17]

Given that the evidence in question does not raise Confrontation Clause concerns and that

---

[17]   Morrow in his reply also indicates that the Court admitted the certificates "without any reliability finding or any attempt to engage in the balancing test required by Rule 32.1."  Def.'s Reply at 8.  Both Federal Rule of Criminal Procedure 32.1 and this Court's LCrR 32.1 address the procedure for revoking or modifying probation or supervised release and, accordingly, are not relevant to the instant matter under which Morrow currently is serving his term of imprisonment.

defense counsel was presented with the opportunity to cross-examine witnesses who testified that each bank was FDIC-insured, the Court finds that both trial counsel and appellate counsel did not act in an objectively unreasonable manner by failing to raise this challenge either at trial or on appeal.   Nor does the Court find that Morrow was prejudiced by counsels' failure to raise this claim because Morrow has not pointed to any evidence to rebut the claim that the banks were FDIC-insured.   Accordingly, the Court concludes that Morrow's claim that his counsel rendered him ineffective assistance of counsel by failing to raise a Confrontation Clause challenge is without merit.

### F.  *Cross Examination*

Morrow next alleges that his counsel rendered ineffective assistance by failing to properly cross-examine government witnesses Antwon Perry and Noureddine Chtaini during trial based on information provided to defense counsel through discovery.   Def.'s Memo. at 26-29.   The government asserts that this claim is without merit because the Court previously determined that the information in question was immaterial and because the decision of whether and how much to cross-examine is a tactical decision. Govt.'s Opp'n at 23-24.   For the reasons described herein, the Court finds that Morrow's claim as to this issue fails because Morrow has not demonstrated that he was prejudiced in any way by his counsel's alleged failure to properly cross-examine Perry and Chtaini with the specified information.

Morrow's trial counsel filed a motion for a new trial on Morrow's behalf after the jury returned the guilty verdict, arguing, in part, that the government had withheld material evidence and precluded its effective use by disclosing the information in an untimely manner during trial. *See* Def.'s Mot. for New Trial at 1-6, ECF No. [488].  Specifically, Morrow in that motion argued

that after one of the main government witnesses, Noureddine Chtaini, testified at trial, the government provided defense counsel with Jencks material related to another witness, Antwon Perry.  Morrow argued that the Jencks material reflected that Perry had previously provided information that contradicted some of Chtaini's testimony.  In his motion, Morrow argued that if the information had been provided to the defense before Chtaini's testimony, then it could have been used for impeachment purposes.  In response to this motion, the government filed an opposition noting that it had provided the Jencks material related to Perry to the defense on April 22, 2005, prior to the commencement of Chtaini's testimony on May 3, 2005, and the commencement of the Defendants' cross-examination of Chtaini on May 10, 2005.  Govt.'s 1st Resp. in Opp'n to Def. Morrow's Mot. for a New Trial at 2-3, ECF No. [490].  In his response, Morrow conceded that the Jencks material had been disclosed prior to Chtaini taking the stand at trial.  Nevertheless, Morrow argued that the disclosure of this material was untimely and did not satisfy the government's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), because the timing of the government's disclosure made the exculpatory and impeaching statements "predestined to go undetected by the defendants until after the conclusion of Mr. Chtaini's testimony."  Def.'s Supp. Memo. in Support of his Mot. for New Trial at 1, ECF No. [509].

In the instant motion, Morrow does not argue that the government violated *Brady* by failing to make a timely disclosure of the material at issue because, as he concedes, the information was disclosed 18 days prior to the commencement of the Defendants' cross examination of Chtaini. Rather, Morrow argues that his counsel was ineffective for failing to use this information for impeachment purposes during her cross-examination of Chtaini and also to point out the contradictions in the two witnesses' statements during her cross-examination of Perry.  Def.'s

Memo. at 28.   Morrow argues that if his counsel impeached Chtaini with the contradictory information provided by Perry, the jury would not have credited Chtaini's testimony and, as a result, would not have convicted Morrow.   *Id.*

In ruling on Morrow's motion for a new trial, the Court summarized the apparent discrepancies between Perry's grand jury testimony and Chtaini's trial testimony.   In the instant action, Morrow focuses on the differences in specific details provided by Perry and Chtaini related to an uncharged, thwarted robbery of an armed car that members of the RICO enterprise had planned on January 21, 2004.   *See* Def.'s Memo. at 26-29; *see also* Memo. Op. (Feb. 1, 2006), at 17, ECF No. [555].   The Court noted that while this information was not used to impeach Chtaini, it was clear that Perry's grand jury testimony related to these discrepancies was reviewed by the Defendants and used by them during trial.   Memo. Op. (Feb. 1, 2006), at 24.   Indeed, the Court noted that the counsel for one of Morrow's codefendants elicited testimony from Perry during cross-examination regarding the discrepancies between his own recollection and Chtaini's testimony of the foiled robbery of the armored car on January 21, 2004.   *Id.*   Ultimately, the Court held that the discrepancies focused on by Morrow in his motion for a new trial were immaterial. As the Court explained in its Memorandum Opinion:

> First, the testimony focused on an event introduced only as evidence that certain Defendants and Mr. Chtaini knew each other and associated together prior to the first bank robbery in this case. The January 21, 2004 act was not charged as an offense, either as part of the Count I RICO Conspiracy or in any substantive count against any Defendant.  Second, the discrepancies between Mr. Perry's grand jury testimony and Mr. Chtaini's trial testimony are quite minor. At the very least, both individuals agreed that (1) Chtaini, Perry, Morrow, and Palmer planned and attempted to rob an armored car on January 21, 2004; (2) the plan fell through, because the armored car never arrived; (3) Defendant Aguiar had an awareness of the plot; (4) and the group decided to eat pizza in order to tide their growing hunger . . . . The differences cited to by Defendant Morrow, involving where the pizza was

delivered, who drove what vehicle, and the exact route of the group's pre- and post-attempt travels, simply pale in comparison to the great similarities between the two accounts, thereby significantly decreasing the "impeachment" value of Mr. Perry's grand jury testimony on Mr. Chtaini.  Third, as noted previously, the majority of these differences were elicited from Mr. Perry in the defense case, and focused upon by the defense in closing arguments in an effort to undermine Mr. Chtaini's credibility.  **Fourth, and finally (taking all of the points discussed by the Court into account), even had the jury been made aware of all identified difference[s] while Mr. Chtaini was still on the stand, the information would <u>not</u> have undermined confidence in the verdict of guilty; there is <u>not</u> a "reasonable probability" that the information would have resulted in a different outcome at trial.**

*Id.* at 25-26 (emphasis added).  In the instant motion, Morrow argues that "this information was material and had counsel use[d] it to impeach Chtaini and Perry, there is a reasonable probability that the result would have been different."  Def.'s Memo. at 28.

The Court finds no reasons to disturb its extensive findings and conclusions reached in response to Morrow's motion for a new trial.  As such, the Court concludes that, even if the jury had been made aware of all of the discrepancies between Chtaini's and Perry's testimony, the information would not have undermined the jury's confidence in its guilty verdict nor is there a reasonable probability that the information would have resulted in a different outcome at trial. Further, as the Court noted in ruling on the motion for a new trial, many of the discrepancies were pointed out by counsel for Morrow's codefendants and, as such, were presented to the jury. Accordingly, the Court concludes that Morrow was not prejudiced in any way by his trial counsel's alleged failure to properly cross-examine Chtaini and Perry with the identified information that the Court previously held to be immaterial.

### G. *Government Misconduct*

Morrow next argues that his trial counsel was ineffective by failing to challenge

39

government misconduct at trial and that his appellate counsel was ineffective for failing to raise the issue of government misconduct on appeal.  Def.'s Memo. at 29, 35. Generally, Morrow asserts that from a review of the trial transcripts, "it is clear that the government vouched for its witnesses and made several prejudicial remarks to the jury during closing." *Id.* at 29.  Morrow also alleges that two coconspirators who turned government witnesses both testified that they were not expecting and had not been promised any benefit for testifying at trial. *Id.*  The Court shall address each claim in turn.

First, the vague assertion regarding the government's closing argument is insufficient to establish that Morrow's counsels' performance fell below an objective standard of reasonableness. Indeed, Morrow cannot overcome the strong presumption that his counsel acted reasonably by simply lodging a vague objection that the government vouched for unidentified witnesses and made prejudicial remarks during closing without citing a single example of objectionable conduct. *See United States v. Moore*, 651 F.3d 30, 85 (D.C. Cir. 2011), *cert. denied* -- U.S. --, 132 S. Ct. 2772 (U.S. 2012) (Defendant must raise a "'colorable claim' by making 'factual allegations that, if true, would establish a violation of his sixth amendment right to counsel.'"); *see also United States v. Rush*, 910 F. Supp. 2d 286, 293-94 (D.D.C. 2012) (requiring more than a broad claim that counsel failed to secure and adequately explain the terms of a plea agreement to overcome the presumption that defense counsel's representation was reasonable).  Accordingly, the Court finds that Morrow's claim that his trial and appellate counsel were ineffective by failing to challenge unspecified incidents of prosecutorial misconduct is without merit.

Second, Morrow asserts that government witnesses Noureddine Chtaini and Antwon Perry both testified that they were not expecting nor had been promised any benefit for testifying.  Def.'s

Memo. at 29.  Morrow's assertion that both Chtaini and Perry testified that they had not been promised anything in exchange for their testimony is incorrect.  Specifically, Chtaini indicated that he had pled guilty to multiple charges, Tr. 3102:16—3104:4 (May 3, 2005), and, if he complied with the terms of his agreement including testifying truthfully and cooperating with the government, that the government would submit a 5K letter requesting a sentence that departed from the Guideline range, *id.* at 3104:25—3105:15.  Chtaini also indicated that he had not yet been sentenced, but that he would be sentenced by this Court and that no one had indicated to him what sentence this Court would impose. *Id.* at 3105:16-24.  Similarly, Perry indicated that he had entered a guilty plea, that he discussed the sentencing guidelines with his attorney, that he was cooperating in hopes of getting a lesser sentence, and that although he would be sentenced by this Court, he had not yet been sentenced.  Tr. 5486:1—5488:6 (Jun. 1, 2005).

Accordingly, Morrow cannot establish that either his trial or appellate counsel was ineffective for failing to object with respect to, or raise on appeal, this issue, because it is clear from the record that neither witness testified that he was not expecting any benefit in exchange for testifying.

### H.  *Juror Misconduct and Bias*

Next, Morrow argues that his trial counsel failed to effectively represent him when allegations of juror misconduct and bias arose, and that his appellate counsel failed to raise the issue on appeal.  Def.'s Memo. at 30-31, 35.  Allegations of juror misconduct were raised in two post-trial motions by trial counsel.  On August 15, 2005, Morrow filed a Motion for a New Trial which the Court considered on behalf of Morrow as well as the other codefendants.  Morrow's Mot. for New Trial, ECF No. [488]; *United States v. Morrow*, 412 F. Supp. 2d 146, 152 n.4 (D.D.C.

2006).  Defendants alleged that: jurors went to both the scenes of the bank robberies and another

relevant location, and described the areas during deliberations; jurors read and were influenced by

a *Washington Post* article that had been admitted into evidence after it was found at a codefendant's

apartment; and at least one juror remained in contact with a juror who had been dismissed from

the jury after making improper comments about the defendants' guilt during the trial.  Morrow's

Mot. for New Trial at 6-7; Def.'s Supp. Memo. in Support of Mot. For New Trial at 2-3, ECF No.

[509].  After becoming concerned about the "relative unspecific and generalized assertions of juror

misconduct by Defendants," the Court set the matter for an evidentiary hearing on the issue of the

alleged jury misconduct.  *Morrow*, 412 F. Supp. 2d at 152.  Prior to the hearing, the Court directed

that the Defendants provide the Government and the Court with any statement made by a juror-

witness expected to appear at the evidentiary hearing, and information identifying the individual

or individuals to whom the juror made such statements.  *Id.*  Defendants produced post-trial emails

between counsel and one juror, Juror #1.  *Id.*

      The Court held an evidentiary hearing on the issue of juror misconduct on October 31,

2005, and Juror #1, who was the only juror who provided information relied upon by Defendants,

testified under oath.  Min. Entry (Oct. 31, 2005); *Morrow*, 412 F. Supp. 2d at 152.  However, in

keeping within the confines of Federal Rule of Evidence 606(b),[18] which governs inquiries into

---

[18] At the relevant time, Federal Rule of Evidence 606(b) proscribed:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify
> as to any matter or statement occurring during the course of the jury's deliberations
> or to the effect of anything upon that or any other juror's mind or emotions as
> influencing the juror to assent to or dissent from the verdict or indictment
> concerning the juror's mental processes in connection therewith, except that a juror
> may testify on the question whether extraneous prejudicial information was

the validity of a verdict in which a juror is called as a witness, the Court conducted the initial inquiry and then allowed each defendant the opportunity to ask further questions. *Morrow*, 412 F. Supp. 2d at 152-53. After hearing the evidence and reviewing additional briefing filed after the hearing, the Court entered a 44-page Memorandum Opinion specifically considering and rejecting each of the claims of juror misconduct as a basis for granting a new trial. *See generally id.* at 164-74. Further, the Court found that the likelihood of prejudice was too insignificant to warrant a more invasive hearing involving more members of the jury. *Id.* at 167. Accordingly, the Court denied the Defendants' requests for further hearings and for a new trial. *Id.* at 174.

On April 7, 2006, Morrow filed a second motion for a new trial, alleging juror misconduct on the basis that Juror #2, the foreperson of the jury, lied or omitted facts during *voir dire* regarding her relationship with Jerrold E. Vincent, a person unrelated to this case who allegedly had been charged with and convicted of assault. *See* Morrow's Mot. to Reopen Def. Morrow's Mot. for New Trial, Or, In the Alt., Mot. for New Trial on Newly Discovered Evid., ECF No. [596]. The Court did not hold a hearing on the issue, and instead based its ruling on a searching examination of the Defendants' second motion, the Government's opposition, the replies filed by numerous Defendants, the attached exhibits, the relevant case law, and the entire record.[19] *United States v. Morrow*, Crim. No. 04-355 (CKK), 2006 WL 1147615, at *1 (D.D.C. Apr. 26, 2006). On April

---

improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Fed. R. Evid. 606(b) (2005) (amended 2011).

[19] The Court notes that at the time of the filing of the Defendants' second motion for a new trial, Juror #2 was deceased. *Morrow*, 2006 WL 1147615, at *3.

26, 2006, the Court issued a 35-page Memorandum Opinion detailing its reasons for denying the Defendants' second motion for a new trial. *See generally id.* The Court first found that the Defendants' second motion for a new trial was untimely. Additionally, the Court held that "Defendants [] simply made no showing of bias resulting from Mr. Vincent's situation that could have transferred to them which would be sufficient to support a strike for cause of Juror # 2 had that information been disclosed." *Id.* at *19.

Morrow's arguments in the instant motion appear to center around the first motion for a new trial, involving the claims made by Juror #1. *See* Def.'s Memo. at 30-31 (only mentioning the juror misconduct claims raised by Juror #1 and not those surrounding Juror #2). Morrow raises two specific objections to his counsel's performance at the October 31, 2005 hearing: (1) Defense counsel should have subpoenaed the other jurors who were identified by Juror #1 as the possible sources of misconduct; and (2) Defense counsel should have taken the stand to "present evidence regarding her personal knowledge of the alleged misconduct garnered while talking to Juror No. 1, and/or any other jurors involved." *Id.* The Court shall address each challenge in turn.

Turning first to Morrow's charge that his counsel should have subpoenaed the other jurors to testify at the October 31, 2005, hearing, the Court notes that it limited the presentation of evidence at that hearing. The Court held a hearing on the issue of the alleged juror misconduct in light of the vague allegations of juror misconduct made in the Defendants' motion. As the Court set forth in a written Order prior to the hearing:

> The purpose of the evidentiary hearing was to put on the record in detail the allegations of juror misconduct made by an unidentified 'juror' set forth in Defendant Morrow's Motion for a New Trial, allow for cross-examination by the Government to investigate the claims made, and provide the opportunity to take further action vis-á-vis other jurors if necessary.

Order (Oct. 27, 2005), at 1, ECF No. [528].   The Court, citing its great discretion in the investigation of alleged juror misconduct, set the parameters of the hearing:

> Given that the basic goal of a post-trial evidentiary hearing relating to allegations of juror misconduct is to uncover potential prejudice to Defendants, the parameters of Federal Rule of Criminal Procedure 26.2 are largely inapplicable.   The October 31, 2005 hearing will not be a typical trial matter where the parties' strategies in the presentation of witnesses may be relevant or important, and the parties' presentations and questioning are not designed to influence the fact-finder regarding the relative guilt or innocence of the Defendants. Rather, the Court is conducting its own post-trial proceeding and is calling this juror in order to determine (1) if any juror misconduct occurred, (2) the scope of the misconduct, and (3) whether any substantive rights were infringed.

*Id.* at 3.   Accordingly, it was the Court, and not defense counsel, that made the decision to hear from only Juror #1, the sole juror raising allegations of juror misconduct, during this hearing. Indeed, the purpose of the hearing was to place the allegations on the record so that the Court could make a decision as to whether a further hearing involving other jurors was necessary.   After hearing the testimony of Juror #1, the Court determined that a further hearing was not necessary and expressly denied the Defendants' request to conduct a further hearing to take testimony from other jurors. *See Morrow*, 412 F. Supp. 2d at 167 ("Upon a review of the record adduced at the October 31, 2005 hearing, the Court—in employing its discretion—finds that a more invasive hearing involving other members of the jury is unnecessary and not in the interests of justice.").   Given that it was the Court's and not defense counsel's decision to take testimony only from Juror #1 at the evidentiary hearing, this is an improper basis for an ineffective assistance of counsel claim. Further, it is clear from the record that the defense counsel unsuccessfully attempted to persuade the Court to take testimony from the other jurors, a request that the Court denied as part of its lengthy written opinion. *See Morrow*, 412 F. Supp. 2d at 173-74.   Accordingly, Morrow's claim

that his counsel was ineffective for failing to subpoena other jurors is without merit because such subpoenas would have been fruitless given that the Court indicated that it would only hear testimony from Juror #1 at that hearing.

Morrow's second claim that his counsel should have testified fails for similar reasons. First, as previously discussed, it is apparent from the record that the Court only permitted testimony directly from Juror #1 at the hearing in question.  Second, any testimony by Morrow's counsel regarding conversations that she had with jurors about potential misconduct raises a host of evidentiary issues.  *See, e.g.,* Fed. R. Evid. 802 & 805 (rules against hearsay and hearsay within hearsay); *Id.* 602 (requirement that a witness may only testify as to matters to which he or she has personal knowledge).  Third, allowing Morrow's counsel to testify on Morrow's behalf also raises ethical concerns.  *See* Model Rules of Prof'l Conduct R. 3.7 & cmt. n.1 ("Combining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client."); D.C. Rules of Prof'l Conduct R. 3.7.  For all these reasons, the Court concludes that trial counsel's performance related to the juror misconduct issues that arose after trial was objectively reasonable in light of professional norms.

Morrow also asserts that his appellate counsel rendered ineffective assistance of counsel by failing to argue during the appeal that he was entitled to a new trial based on the alleged juror misconduct.  Def.'s Memo. at 35.  Morrow's claim as to his appellate counsel also fails for the reasons described herein.   The *Strickland* standard applies to claims of ineffective assistance of both trial and appellate counsel.  *Payne v. Stansberry*, 760 F.3d 10, 13 (D.C. Cir. 2014). Accordingly, in order to prevail, Burwell must demonstrate: "(1) his counsel's performance 'fell below an objective standard of reasonableness,' and (2) 'there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984)). As the Supreme Court has noted, "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). However, the Court noted that "it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent." *Id.*

In the instant action, Morrow's appellate counsel chose not to raise the issue of the alleged jury misconduct in favor of raising other claims on Morrow's behalf. For instance, Morrow's appellate counsel raised issues applicable to all codefendants, including that the Court admitted uncharged crimes evidence that was substantially more prejudicial than probative, that the Court deprived Morrow and his codefendants their right to present a complete defense by excluding other crimes evidence demonstrating government witness Chtaini's bias and motive to falsely implicate them, and that the Court erred when it refused to allow extrinsic evidence that a key witness against Morrow and his codefendants said he was going to lie. Jt. Brief of the Appellants at 15-62, *Burwell et al v. United States*, No. 06-3083 (D.C. Cir. Oct. 2, 2009). Here, the Court cannot conclude that appellate counsel's decision not to raise the issue of the alleged juror misconduct was objectively unreasonable given professional norms, nor can the Court conclude that if appellate counsel had raised this issue, that there is a reasonable probability of a different result on appeal. First, the D.C. Circuit has recognized for claims of juror misconduct, "[t]he trial court obviously is the tribunal best qualified to weigh the relevant factors and draw the conclusion appropriate." *United States v. Williams*, 822 F.2d 1174, 1189 (D.C. Cir. 1987). Second, as the Government points out,

the D.C. Circuit utilizes a "highly deferential" standard of review for a district court's denial of a motion for a new trial. Govt.'s Opp'n at 27 (citing *United States v. Rouse*, 168 F.3d 1371, 1376 (D.C. Cir. 1999)); *see also United States v. Gloster*, 185 F.3d 910, 914 (D.C. Cir. 1999) ("We will reverse a district court's decision whether to grant such a motion [for a new trial] 'only if the court abused its discretion or misapplied the law.'").

The Court finds that there is not a reasonable probability of a different result on appeal had the issue of juror misconduct been raised. As this Court noted, "Quite simply, the circumstances adduced by Defendants do not approach those other, far more egregious cases where the D.C. Circuit has previously found that no 'prejudice' occurred and no new trial was warranted despite third-party contacts with the jury." *Morrow*, 412 F. Supp. 2d at 174. Given the standard of review, the Court concludes that appellate counsel's failure to raise the alleged juror misconduct on appeal in favor of stronger claims was objectively reasonable. *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). Accordingly, the Court finds that Morrow is not entitled to relief on his ineffective assistance of counsel claims related to the alleged juror misconduct.

**I.   *Rule of Lenity***

Morrow next argues that his trial and appellate counsel were ineffective for failing to argue that the rule of lenity governed the application of 18 U.S.C. § 924(c) in this action because the statute, which creates the offense of using and carrying a firearm during and in relation to a crime of violence, is ambiguous. Morrow raises two specific arguments with relation to this claim. First, Morrow asserts that his counsel should have argued that the rule of lenity precluded him from

48

being charged with, convicted of, and sentenced based on multiple violations of § 924(c).  Second,

Morrow argues that "a reasonably competent criminal defense attorney would have argued that the

Rule of Lenity prevented a sentence imposed based on the Court's finding that a machine gun was

used in Counts 4, 8, 11, and 16."  Def.'s Memo. at 32.  Specifically, Morrow asserts that § 924(c)

is ambiguous as to the issue of whether a defendant must *know* that the weapon he used, carried,

or possessed was capable of firing automatically in order to be convicted and sentenced with using

and carrying a firearm that is a machinegun and, as such, the rule of lenity requires that the Court

interpret the statute in Morrow's favor.  *See* Def.'s Memo. at 32-34.  The Court finds both

arguments with relation to the rule of lenity are without merit for the reasons described herein.

"The rule of lenity prevents the interpretation of a federal criminal statute 'so as to increase

the penalty that it places on an individual when such an interpretation can be based on no more

than a guess as to what Congress intended.'"  *United States v. Burwell*, 690 F.3d 500, 502 (D.C.

Cir. 2012) (en banc) (quoting *United States v. Villanueva-Sotelo*, 515 F.3d 1234, 1246 (D.C. Cir.

2008)).  Here, Morrow first argues that he was improperly charged with four violations of § 924(c)

because all of the charges arose out of the same conduct.  Morrow asserts that the statute is

ambiguous with regard to whether these multiple charges are permissible and, as such, the rule of

lenity requires the Court to resolve the ambiguity in Morrow's favor. Morrow appears to be raising

an argument similar to his previously discussed double jeopardy claim, namely that he was

improperly charged with four § 924(c) violations even though the four violations arose out of the

same conspiracy.

In the instant motion, Morrow cites to several cases that address the ambiguity of § 924(c)

as it relates to issues that are distinguishable from the facts of the instant case.  Indeed, the cited

cases address the issues of whether a criminal defendant can be charged with multiple counts pursuant to § 924(c) for a *single use of a firearm* that gave rise to more than one predicate offense, and whether a criminal defendant can be charged with multiple counts pursuant to § 924(c) that are tied to only *one predicate offense*. *See United States v. Anderson*, 59 F.3d 1323, 1333-34 (D.C. Cir. 1995) (en banc), *cert. denied* 516 U.S. 999 (1995) (applying the rule of lenity when determining whether a criminal defendant could be charged with four counts pursuant to § 924(c) for four separate uses of a firearm tied to only one predicate offense, a narcotics conspiracy); *United States v. Wilson*, 160 F.3d 732, 749-50 (D.C. Cir. 1998), *cert. denied* 528 U.S. 828 (1999) (applying the rule of lenity when determining whether a criminal defendant may be charged with two counts pursuant to § 924(c) for a single use of a firearm giving rise to two separate predicate offenses); *United States v. Wallace*, 447 F.3d 184, 185, 189-90 (2d Cir. 2006), *cert. denied* 549 U.S. 1011 (2004) (holding that the statute is ambiguous when determining whether a criminal defendant was inappropriately convicted for two violations of § 924(c)(1) based on his committing two predicate offenses with a single use of a firearm); *United States v. Finley*, 245 F.3d 199, 201, 206-08 (2d Cir. 2001), *cert. denied* 534 U.S. 1144 (2002) (finding that the statute is ambiguous as related to the issue of "whether a defendant may be sentenced to two mandatory, consecutive prison terms under 18 U.S.C. § 924(c)(1) when he possesses a single firearm during a single drug transaction that results in separate drug possession and drug distribution offenses").

No such ambiguity exists here because it was clear that each of Morrow's four § 924(c) charges was tied to a separate charged crime of violence, armed robbery, involving the separate use of a firearm. *See, e.g., United States v. Rentz*, 777 F.3d 1105, 1107 (10th Cir. 2015) ("This circuit and virtually every other has held that for each separate § 924(c)(1)(A) charge it pursues

government must prove a separate crime of violence or drug trafficking crime."). Indeed, Morrow

was charged with four counts of using and carrying a firearm during and in relation to a crime of

violence. The four separately charged crimes of violence were the armed robberies of January 22,

2004 (Count III), March 5, 2004 (Count VII), June 12, 2004 (Count X), and June 29, 2004 (Count

XV). Superseding Indictment (Feb. 15, 2005), at 17, 21, 24, 29. Further, as specified in the

indictment, it was alleged that Morrow was armed with two semi-automatic handguns in relation

to the January 22, 2004, armed robbery, two semi-automatic handguns in relation to the March 5,

2004, armed robbery, a fully automatic AR-15 assault weapon in relation to the June 12, 2004,

armed robbery, and a fully automatic AK-47 assault weapon in relation to the June 29, 2004, armed

robbery.[20]  *Id.* at 8, 12-13. The application of § 924(c) to the facts of the instant case does not give

---

[20] Morrow appears to raise a separate argument for the first time in his reply to his § 2255 motion, that the sentence imposed on him by the Court was impermissible in light of the Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The *Apprendi* Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. Here, it is unclear as to what specific objection Morrow is raising with regard to his sentence based on the argument in his reply, but the Court discerns that he may be arguing that the application of certain mandatory minimum sentences pursuant to § 924(c) based on his use of specific firearms and based on the fact that he brandished and discharged the firearm during certain acts was impermissible under *Apprendi*. *See* Def.'s Reply at 9-12. First, the Court notes that this claim does not need to be considered because it was raised for the first time in Morrow's reply. *See Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008). Nevertheless, the Court finds this argument is without merit because the jury found Morrow guilty beyond on a reasonable doubt on each of the four § 924(c) charges. Further, in the relation to these charges, the jury separately found each of relevant facts that resulted in an increased sentence was proven beyond a reasonable doubt. The verdict form reflects with relation to Counts IV, VIII, XI, and XVI that it was proven that Morrow "used of carried a firearm or aided and abetted the use and carrying of the firearm," "possessed a firearm or aided and abetted the possession of the firearm," and "brandished the firearm or aided and abetted the brandishing of the firearm." *See* Verdict Form at 4, 5, 6-7, 8, ECF No. [471]. With relation to Counts XI and XVI, the jury also found it was proven that Morrow "discharged the firearm or aided and abetted the discharge of the firearm." *Id.* at 6, 8. The jury separately found with relation to Counts IV, VIII, and XI that it was proven that

51

rise to ambiguity such that the rule of lenity is applicable because each § 924(c) was tied to a separate armed robbery charged in the indictment.  Accordingly, the Court concludes that Morrow's ineffective assistance of counsel claim both at the trial and appellate level fails because Morrow has not demonstrated that his counsels' performance was deficient for failing to raise this argument or that he was prejudiced in any way by the failure to raise this argument.

Turning to Morrow's second argument regarding the *mens rea* requirement for the machinegun provision of § 924(c), as the government properly points out, the D.C. Circuit *en banc* specifically rejected this argument when it was raised on appeal by one of Morrow's codefendants. The Circuit explained:

> [T]o invoke the rule of lenity, a court must conclude that "there is a *grievous* ambiguity or uncertainty in the statute." . . . "The simple existence of some statutory ambiguity . . . is not sufficient to warrant application of that rule, for most statutes are ambiguous to some degree . . . ."  There is no grievous ambiguity here because, as this Court held twenty years ago in *Harris*, the structure, statutory context, and purpose of § 924(c)(1)(B)(ii) all make clear that the provision does not contain a separate *mens rea* requirement. Indeed, as the Supreme Court held in *Dean* when declining to apply the rule of lenity to § 924(c)(1)(A)(iii), "the statutory text and structure convince us that" Congress did not require proof of any additional *mens rea*, and [Morrow's codefendant's] "contrary arguments are not enough to render the statute grievously ambiguous."

*Burwell*, 690 F.3d at 515.  In light of the D.C. Circuit's holding, Morrow cannot demonstrate that he was prejudiced by either his trial or appellate counsel's failure to raise this argument on his behalf.  Indeed, the D.C. Circuit expressly rejected this argument when it was raised by Morrow's codefendant and, accordingly, Morrow cannot demonstrate a reasonable likelihood that the result

---

the firearm was a semiautomatic assault weapon, but not that it was a machinegun.  *See id.* at 4, 5, 7.  Further, the jury separately found under Count XVI that the firearm was a semiautomatic assault weapon as well as a machinegun.  *Id.* at 8.  As such, the Court finds that Morrow's vague *Apprendi* argument contained in his reply is without merit.

would have been different had he raised it.  For the reasons described, the Court finds that Morrow's ineffective assistance of counsel claims related to this issue are without merit.

### J.  *Petition for Writ of Certiorari*

Morrow further alleges that his appellate counsel was ineffective in relation to Morrow's failure to file a writ of certiorari with the Supreme Court of the United States after his conviction was affirmed by the D.C. Circuit.  In his affidavit filed alongside his § 2255 motion, Morrow asserts:

> Following the denial of my appeal, I contacted my counsel by phone and letter expressing my desire to file a petition for a writ of certiorari to the Supreme Court. Counsel's only response, however, was that there was nothing to argue to the Supreme Court and that he was no longer my attorney.

Def.'s Declaration ¶ 6.  In his motion, Morrow further argues that his appellate counsel never informed him of his right to proceed *pro se* before the Supreme Court, nor did he inform Morrow of the 90-day deadline for petitioning the Court for certiorari.  Def.'s Memo. at 36.

The parties in their briefs do not appear to dispute that a criminal defendant does not have a right to counsel to pursue a petition for a writ of certiorari and, as such, a defendant cannot be rendered constitutionally ineffective assistance of counsel because no right to counsel exists. Def.'s Memo. at 36 ("Mr. Morrow is not entitled to effective assistance of counsel in filing a petition for a writ of certiorari . . . ."); Govt.'s Opp'n at 30-31 ("[B]ecause he had no constitutional right to counsel in seeking review with the Supreme Court, defendant cannot claim constitutionally ineffective assistance of counsel based on his counsel's failure to file a petition for a writ of certiorari."); *see also, e.g., Wyatt v. United States*, 574 F.3d 455, 459 (7th Cir. 2009), *cert. denied* 559 U.S. 1023 (2010) ("[A] criminal defendant has no constitutional right to counsel to pursue a

petition for a writ of certiorari. And where there is no constitutional right to counsel, there cannot be constitutionally ineffective assistance of counsel.").  Nonetheless, Morrow's argument does not appear to be that his appellate counsel was required to file a petition for a writ of certiorari on his behalf, but rather that his counsel was ineffective because he failed to advise Morrow of his right to proceed *pro se* before the Supreme Court and of the relevant deadline for petitioning the Court. However, even assuming that Morrow's appellate counsel failed to inform him of his right to seek certiorari and the relevant time frame for petitioning the Supreme Court, Morrow has not demonstrated that he was prejudiced in any way by his appellate counsel's inaction.[21]

"Review on a writ of certiorari is not a matter of right, but of judicial discretion. A petition for a writ of certiorari will be granted only for compelling reasons."  Sup. Ct. R. 10.  Here, Morrow has alleged no specific meritorious claim that he believes would have warranted the Supreme Court's grant of certiorari in his case.  Nor does Morrow contend anywhere in his pleadings that he would have filed a petition for a writ of certiorari with the Supreme Court had he been advised by his counsel that he could proceed *pro se* within the proscribed time period.  Further, the Court notes that four of the five codefendants with whom Morrow stood trial petitioned the Supreme Court for certiorari and in each instance, the petition was denied by the Supreme Court.  *See Burwell v. United States*, -- U.S. --, 133 S. Ct. 1459 (2013); *Perkins v. United States*, -- U.S. --, 132 S. Ct. 537 (2011); *Aguiar v. United States*, -- U.S. --, 132 S. Ct. 357 (2011); *Palmer v. United States*, -- U.S. --, 132 S. Ct. 329 (2011).  Morrow has pointed to no specific issue at all, let alone

---

[21] While it is unsettled in this jurisdiction, other circuits addressing the issue have held that a criminal defendant's right to effective assistance of counsel does not extend a duty to inform the client of his right to proceed *pro se* with a discretionary appeal.  *See Summers v. United States*, No. 2:11–cv–908–WHA, 2014 WL 5463910, at *6 (M.D. Ala. Oct. 27, 2014) (collecting cases).

one unique to his conviction, that he claims the Supreme Court would have reviewed if it had been raised in a petition for a writ for certiorari.  Accordingly, the Court concludes that Morrow's ineffective assistance of counsel claim with relation to this issue fails because Morrow has not demonstrated that he was prejudiced in any way by his appellate counsel's alleged failure to inform him that he could file a writ of certiorari with the Supreme Court within 90 days after the entry of judgment by the D.C. Circuit.

### K. *Intervening Changes in Law*

Finally, Morrow notes that at the time that he filed his § 2255 motion, the D.C. Circuit had granted his codefendant Bryan Burwell's petition for rehearing *en banc* on the issue of whether 18 U.S.C. § 924(c)(1)(B)(ii), the statute governing Count XI, requires the government to prove that the defendant knew that the weapon he was carrying while committing a crime of violence was capable of firing automatically.  *United States v. Burwell*, 690 F.3d 500, 502 (D.C. Cir. 2012). Morrow argued that "[d]ue process and fundamental fairness requires that Mr. Morrow also receive the benefit of any favorable decision from co-defendant Burwell's petition for rehearing." Def.'s Memo. at 36.  The Court notes that this request is moot because the D.C. Circuit ultimately held that the statute in question did not require that the defendant know that the weapon he used, carried, or possessed was capable of firing automatically, and, accordingly, the D.C. Circuit affirmed Burwell's conviction.  *Burwell*, 690 F.3d at 516.  Burwell filed a petition for writ of certiorari which was denied by the Supreme Court of the United States.  *United States v. Burwell*, -- U.S. --, 133 S. Ct. 1459 (2013).  As such, there is no intervening change in law based on Burwell's appeal that would benefit Morrow.

### L. *Issues Raise in Defendant's Supplement to his § 2255 Motion*

After briefing was complete on the instant motion, Morrow submitted a supplement to his § 2255 motion which the Court granted leave to file, raising three additional claims. *See* Def.'s Supp., ECF No. [830]. Specifically, Morrow argued that his trial and appellate counsel were ineffective by failing to: (1) raise jurisdictional challenges to the RICO conspiracy charge; (2) contest the certain racketeering acts that served as part of the basis for the RICO conspiracy charge; and (3) argue improper joinder of the RICO conspiracy charge. The government filed an opposition to the supplement, arguing that the claims in the supplement were time barred and also that the three claims were meritless. Govt.'s Supp. Opp'n, ECF No. [861]. Morrow filed a reply brief in support of his supplement. Def.'s Supp. Reply, ECF No. [885]. In an exercise of its discretion, the Court shall permit Morrow to supplement his motion. However, for the reasons described herein, the Court finds that Morrow is not entitled to relief on the basis of any of these three claims.

Turning to his first argument, Morrow asserts that counsel should have raised a jurisdictional challenge to the RICO conspiracy charge because he alleges the economic, enterprise, and continuity requirements of such a charge were not satisfied.[22] The Court shall first address the economic component of the charge. "'[T]o satisfy § 1962(d), the government must prove that an enterprise affecting interstate commerce existed . . . .'" *United States v. Cornell*, 780 F.3d 616, 621 (4th Cir. 2015) (quoting *United States v. Mouzone*, 687 F.3d 207, 218 (4th Cir. 2012)). Here, the indictment specifies that one of the purposes of the conspiracy was "committing

---

[22] Morrow indicates in his motion that was unsure if the Court instructed the jury on the jurisdictional requirements of the RICO charge because he did not have a copy of the jury instructions. The record reflects that the Court did in fact issue such instructions to the jury. *See* Tr. 8005:24—8017:17 (Jun. 21, 2005).

robberies, including bank robberies, in the District of Columbia, the District of Maryland and elsewhere for the purpose of obtaining money and other things of value." Superseding Indictment (Feb. 15, 2005), at 3. The bank robberies are predicate acts that are sufficient to satisfy the economic requirement of the RICO charge.[23]  *See, e.g., Cornell*, 780 F.3d at 622-23 (holding that the economic component was satisfied when evidence was presented that the RICO enterprise engaged in bank fraud, and regularly communicated by phone and committed multiple robberies using guns that traveled in interstate commerce);  *United States v. Robinson*, 389 F.3d 582, 594 (6th Cir. 2004), *cert. denied* 544 U.S. 1026 (2005) (finding that FDIC-insured banks are instrumentalities and channels of interstate commerce); *United States v. Spinello*, 265 F.3d 150, 156 (3d Cir. 2001) (noting that "the robbery of a bank . . . is an 'economic' activity almost by definition . . ." and "[a] bank robber is obviously motivated by his or her own immediate economic gain – money is, of course, 'economic' – and . . . the victim bank and its depositors suffer immediate economic losses as well as the disruption to their respective abilities to engage in commerce, interstate or otherwise, by such activities as lending and purchasing assets").

The Court notes that Morrow only addresses the jurisdictional challenge with relation to the economic component in his reply brief and, accordingly, it is unclear to the Court whether he has abandoned his arguments with relation to the continuity and enterprise requirements. Indeed,

---

[23] Morrow cites the U.S. Court of Appeals for the Seventh Circuit's holding in *United States v. Peterson*, 236 F.3d 848 (7th Cir. 2001), in support of his argument that the armed bank robberies did not satisfy the economic component of the RICO charge. However, *Peterson* is distinguishable from the instant action because *Peterson* dealt with the armed robbery of a home of a person known to sell marijuana. *Id*. at 850-51. The Seventh Circuit noted that not all robberies *per se* affect interstate commerce but some robberies do meet that criteria. *Id.* at 852. The instant action is distinguishable because Morrow was charged with the armed robberies of *banks* in the District of Columbia and Maryland, acts which do affect interstate commerce as described above.

Morrow's sole statement with relation to these issues is that his trial and appellate counsel "were ineffective for failing to raise a jurisdictional challenge to the enterprise and continuity components of R.I.C.O. lacking in this case." Def.'s Supp. at 1. Nonetheless, in abundance of caution, the Court shall address these arguments. As the government notes in its opposition, Morrow's trial counsel did in fact argue in a motion for judgment of acquittal that the government had not established an enterprise in support of the RICO conspiracy charge, including the continuity element required to demonstrate an enterprise.[24] *See* Memo. Op. (Jun. 13, 2005), at 1-2, 9-11, ECF No. [407]. The Court denied Morrow's motion, finding that the evidence presented by the government during its case-in-chief was sufficient to satisfy the requirements of the RICO charge. Indeed, the Court held that "evidence was sufficient to indicate that the Defendants had a common purpose, organization, and a thread of continuity." *Id.* at 12. Moreover, the Court found that the evidence "portrayed the enterprise as having (1) several common purposes, as identified in the Indictment; (2) a basic organization wherein certain members were given specific duties and allowed to share in the assets and weapons of the enterprise; and (3) a level of continuity from inception to the enterprise's ultimate dissolution upon apprehension of the relevant members." *Id.* at 14-15. The Court also noted that Chtaini and Morrow "constituted the inner core of the

---

[24] As the government notes in its opposition, "Defendant Morrow's Motion for Judgment of Acquittal does not appear on the docket." Govt.'s Supp. Opp'n at 5 n.4. The Court was unable to independently locate a copy of the motion in its records, and Morrow's trial counsel indicated that she does not have a copy of the motion as filed at this time. Govt.'s Supp. Opp'n at 5 n.4. However, the Court issued a Memorandum Opinion in which the written motion is expressly referenced and the government filed a written opposition to Morrow's Motion for Judgment of Acquittal which is on the record. *See* Memo. Op. (Jun. 13, 2005), at 1 n.2, ECF No. [407]; Govt.'s Opp'n to Def. Morrow's Mot. for Judgment of Acquittal, ECF No. [397]. From its Memorandum Opinion and the government's Opposition, the Court is able to discern what arguments were raised by Morrow's trial counsel in this motion and considered by the Court in reaching its holding.

enterprise." *Id.* at 14.  Given that this argument was raised before and rejected by this Court after the close of the government's case-in-chief at trial, the Court concludes that Morrow's ineffective assistance of counsel claim with respect to this issue is without merit.  Further, the Court finds Morrow's ineffective assistance of counsel claim as applied to his appellate counsel also is without merit.  Indeed, Morrow has not established that his appellate counsel was deficient for failing to raise this issue on appeal in favor of stronger arguments, as discussed above.  Morrow also has failed to demonstrate that he was prejudiced by the failure to raise this issue on appeal.  Indeed, Morrow does not raise a single argument to support his claim that this Court's conclusion that there was sufficient evidence of each of the elements of the RICO charge was erroneous.  *See* Def.'s Supp. at 1; Def.'s Supp. Reply at 3-4.  Accordingly, the Court finds that Morrow is not entitled to relief based on his claim that his counsel was ineffective for failing to raise certain jurisdictional challenges to the RICO conspiracy charge.

Turning next to Morrow's argument that the bank robberies were not "racketeering activity" pursuant to 18 U.S.C. § 1961(1), the Court finds this argument is without merit for the reasons described herein.  Morrow was charged with four armed bank robberies pursuant to 18 U.S.C. §§ 2113(a) & (d), 2.  The same conduct constituted four of the racketeering acts charged in the indictment in support of the RICO conspiracy charge (Count I).  In his supplement, Morrow appears to argue that these bank robberies do not constitute separate racketeering acts because they are not among the offenses enumerated as racketeering acts pursuant to 18 U.S.C. § 1961(1)(B).  As the government points out, this argument is without merit because the statute specifically defines racketeering acts to include "any act or threat involving . . . robbery . . . which is chargeable under State law and punishable by imprisonment for more than one year."  18 U.S.C. § 1961(1)(A)

(2004).  As such, Morrow's argument is without merit because the statute clearly encompasses the bank robberies as racketeering acts.  Accordingly, the Court concludes that Morrow cannot establish that his trial or appellate counsel were deficient by failing to raise this issue before the trial court or on appeal, nor can the Court conclude that Morrow was prejudiced by the fact that this issue was never raised.

The Court next turns to Morrow's final argument in his supplement, that his counsel was ineffective for failing to challenge impermissible "retroactive misjoinder."  With regard this argument, Morrow simply states "[i]mproper joinder stemming from R.I.C.O. acts was inherently prejudicial that there is a case of retroactive misjoinder in this case." Def.'s Supp. at 2.  Morrow further explains in his reply in support of his supplement, "[i]n the event that this court agrees that the R.I.C.O. conviction is unconstitutional, then there is a retroactive misjoinder that prejudiced movant in the (stand alone) bank robbery counts based on the prejudicial spillover effect of the evidence presented in the RICO Count."  Def.'s Supp. Reply at 4.  In summary, Morrow argues, "[h]ere it would be unfair to allow the bank robbery convictions to stand even though the government failed to prove the RICO Count."  *Id.*  Accordingly, it appears to the Court that Morrow's argument is that if the Court invalidated his conviction of the RICO conspiracy charge, then it should reconsider his convictions for the four separate bank robberies.[25] For the reasons stated in this Memorandum Opinion, the Court has not found any basis to set aside Morrow's

---

[25] To the extent that Morrow is raising this impermissible misjoinder argument as a basis for a claim of ineffective assistance of counsel, which does not appear to be advanced either in Morrow's supplement or his reply to his supplement, the Court notes as the government pointed out in its opposition that it did issue a lengthy Memorandum Opinion addressing several defense motions raising the issue of improper joinder and requesting severance of certain offenses.  *See generally* Memo. Op. (Mar. 25, 2005), ECF No. [231].

conviction as it relates to Count I based on his ineffective assistance of counsel claims.  Therefore, the Court finds that Morrow's argument regarding impermissible misjoinder is moot.[26]

### M. *Request for Appointment of Counsel*

Presently before the Court also is Morrow's [832] Motion for Appointment of Counsel, requesting that the Court appoint Morrow counsel to represent him in relation to his *pro se* [774] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.  Given that the Court has determined that a hearing is not necessary in this matter, the Court finds that the interests of justice do not require that the Court appoint Morrow counsel in this matter and, accordingly, his request is denied.  *See* 18 U.S.C. § 3006A(a)(2)(B).

### N. *Certificate of Appealability*

When the district court enters a final order resolving a petition under 28 U.S.C. § 2255 that is adverse to the petitioner, it must either issue or deny a certificate of appealability.  Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 11(a).  By statute, "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Such a showing demands that Morrow demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For the reasons set forth above, the Court

---

[26] Morrow claims actual innocence as his grounds for raising this argument for the first time as part of the instant collateral attack rather than on direct appeal.  *See Bousley v. United States*, 523 U.S. 614, 622 (1998).  The Court shall not address this argument because the Court finds that the request is moot.

concludes that Morrow has failed to make that showing in this case, and, accordingly, no certificate of appealability shall issue from this Court.  To the extent Morrow intends to file an appeal, he must seek a Certificate of Appealability from the United States Court of Appeals for the District of Columbia Circuit in accordance with Federal Rule of Appellate Procedure 22(b).

## IV.  CONCLUSION

For the foregoing reasons, the Court finds no reason to set aside Morrow's conviction or sentence.  Accordingly, Morrow's [774] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is DENIED and Morrow's [832] Motion for Appointment of Counsel is DENIED.  Furthermore, no Certificate of Appealability shall issue from this Court.  To the extent Morrow intends to file an appeal, he must seek a Certificate of Appealability from the United States Court of Appeals for the District of Columbia Circuit in accordance with Federal Rule of Appellate Procedure 22.

An appropriate Order accompanies this Memorandum Opinion.

*This is a final, appealable order.*

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE